526 So.2d 505 (1988)
Charles T. MADER, Individually and as Father and Natural Tutor of the Minor Child, Christiaan Mader, and Suzette N. Mader, Plaintiffs-Appellants,
v.
Troy M. BABINEAUX, et al., Government Employees Insurance Company (GEICO), Defendant-Appellee.
No. 87-326.
Court of Appeal of Louisiana, Third Circuit.
May 19, 1988.
Cooper, Ortego & Woodruff, Calvin E. Woodruff, Jr., Abbeville, for plaintiffs-appellants.
Hurlburt & Privat, M. Blake Monrose, Lafayette, Cleveland & Metrailer, Ann M. Metrailer, Baton Rouge, Voorhies & Labbe, Cyd Page, Lafayette, for defendant-appellee.
Before FORET, STOKER and DOUCET, JJ.
STOKER, Judge.
This matter arises out of a personal injury claim, but at this point involves the sole question of penalties and attorney's fees due by an uninsured motorist insurer.
The plaintiffs, Charles and Suzette Mader, have appealed the judgment of the trial court which denied their claim for penalties and attorney's fees against their uninsured motorist carrier, Government Employees Insurance Company (GEICO). The Maders filed suit for damages arising out of a three-automobile collision between vehicles driven by Mrs. Mader, Troy M. Babineaux and Jeffery C. Guidry. The plaintiffs sought recovery from Babineaux, Guidry and their insurer, Dairyland Insurance Company, and from the Maders' uninsured motorist carrier, GEICO. The plaintiffs settled before trial with Babineaux, Guidry and Dairyland for the aggregate $15,000 underlying liability coverage provided to Babineaux and Guidry by Dairyland. GEICO stipulated to the issues of liability and coverage, therefore only the issues of damages, penalties and attorney's fees remained to be tried. After trial on the merits, judgment was rendered in favor of the Maders and against GEICO in the amount of $102,000, subject to credits of $15,000 previously paid by Dairyland and $40,000 previously tendered by GEICO. The tender was refused in settlement of the case but was accepted with a reservation of the right of plaintiffs to proceed for any remaining amount in dispute. The trial court denied the plaintiffs' claim for penalties and attorney's fees. The plaintiffs have appealed only the denial of penalties and attorney's fees, and GEICO has neither appealed nor answered the appeal.

FACTS
On October 25, 1983 Suzette Mader was involved in a rear-end collision with Troy *506 Babineaux and Jeffery Guidry in Lafayette. Mrs. Mader had come to a stop in her lane of travel in order to merge because of road construction. Babineaux struck Mrs. Mader's vehicle in the rear and his vehicle in turn was struck by Guidry's vehicle. At the time of the accident Mrs. Mader was approximately 14 weeks pregnant. She saw her obstetrician, immediately after the accident, who assured her that the child was still alive.
Mrs. Mader first consulted a physician for her complaints of back trouble on November 29, 1983. At that time she saw Dr. Norman Anseman, a specialist in physical medicine and rehabilitation. She continued to see Dr. Anseman through February of 1984. In April of 1984 Mrs. Mader gave birth to her fourth child, Christiaan. Suit was filed on August 9, 1984. Thereafter, on August 29, 1984 Mrs. Mader saw Dr. Anseman because she had suffered a flareup of her back problems after the birth of her child.
In November of 1984 Dr. Anseman recommended that Mrs. Mader have a nerve conduction study, a CAT scan and electromyogram performed. The nerve conduction study and CAT scan were negative, but the electromyogram revealed a lesion of the L-5 nerve root. Mrs. Mader refused to be hospitalized or undergo a CAT scan or myelogram using dye because she was nursing her child. Dr. Anseman referred Mrs. Mader to Dr. Bertuccini, a neurosurgeon, for consultation in February of 1985 in the event that her condition required urgent surgical intervention.
Mrs. Mader continued to see Dr. Anseman through the spring and summer of 1985 showing little or no improvement in her condition. On August 9, 1985 an MRI was performed which revealed degeneration of the disc at L-4/5, also a bulging annulus at L-4/5 and a slightly bulging annulus at L-5/S-1.
Mrs. Mader settled with Babineaux, Guidry and Dairyland in August for their liability policy limits. On December 17, 1985 GEICO offered the plaintiffs $40,000 in full settlement of their demands, which offer was rejected by the plaintiffs. GEICO then made an unconditional tender of the $40,000 on the same day. On the following day, December 18, 1985, the plaintiffs amended their petition to demand penalties and attorney's fees for GEICO's arbitrary and capricious failure to pay under their policy. The Maders' uninsured motorist policy limits were $100,000 per person and $300,000 per accident.

PENALTIES AND ATTORNEY'S FEES
LSA-R.S. 22:658 requires an insurer to pay the amount of any claim due an insured within 60 days after receipt of satisfactory proofs of loss from the insured. If the insurer fails to pay within 60 days after receipt of the proofs and demand, and the failure to pay is found to be arbitrary, capricious and without probable cause, the insurer shall be subject to a penalty of 12%, together with reasonable attorney's fees.
The plaintiffs assert that GEICO was negligent and in bad faith in its handling of their claim. GEICO argues that it acted reasonably in its handling of the Maders' claim. The determination that an insurer has acted arbitrarily, capriciously and without probable cause is partially a factual one which should not be disturbed absent a finding that it is manifestly erroneous. Darbonne v. Safeco Insurance Company of America, 452 So.2d 801 (La.App.3d Cir. 1984). After careful review of the record before us, we find that the trial court erred in denying the plaintiffs' claim for penalties and attorney's fees.
GEICO maintained throughout the proceedings below that, while it did not question liability or coverage and knew the amount of the underlying liability coverage, there was a question concerning the cause of Mrs. Mader's problems. GEICO relied on the fact that Mrs. Mader had been involved in another rear-end collision in 1981 which necessitated a hemilaminectomy at L-4/5 and the fact that she underwent the trauma of childbirth in 1984 in questioning whether the 1983 accident was in fact the cause of Mrs. Mader's back trouble. Additionally, it relied on the initial diagnosis of Dr. Anseman that Mrs. Mader *507 had suffered a sacroiliac joint strain as a result of the accident.
However, Dr. Anseman was deposed in July of 1985 and firmly maintained that Mrs. Mader's injuries were a result of the 1983 accident. Dr. Anseman testified that Mrs. Mader's symptoms in late 1983 and early 1984 indicated a probable sacroiliac joint strain, but that a hypersensitivity over her right great toe was a red flag that the L-5 nerve root could be involved. Dr. Anseman treated Mrs. Mader conservatively and she experienced some improvement over the following three months. Mrs. Mader saw Dr. Anseman on February 3, 1984 and she indicated that there was some improvement. Dr. Anseman instructed Mrs. Mader at that time to return after she delivered her child if the pain did not resolve or if she had a flare-up with delivery.
When Mrs. Mader returned to see Dr. Anseman on August 29, 1984, he found that her straight leg raising test was positive and that she had tenderness over the greater sciatic notch. Based upon these findings, Dr. Anseman felt that there was nerve root involvement. The EMG performed in November of 1984 was abnormal and confirmed Dr. Anseman's findings. His diagnosis at that time was that Mrs. Mader had a pinched nerve in her back. Dr. Anseman put Mrs. Mader in a pelvicbrace with traction and restricted her activity. In December of 1985 Dr. Anseman detected atrophy of the dorsal surface of the right foot and weakness of the muscles. Dr. Anseman continued to see Mrs. Mader over the ensuing months for the same complaints.
By the time Dr. Anseman was deposed in July of 1985, it was his opinion that Mrs. Mader had a significant problem that would require surgery. Based upon Mrs. Mader's history, her symptoms and the objective findings, Dr. Anseman felt that her injury had been a nerve root lesion from the beginning and the sacroiliac pain was probably referred pain from the underlying nerve root lesion. It was his opinion that the problem was exacerbated by her pregnancy and delivery, but was not caused by those events. Dr. Anseman did not believe that the 1981 accident had anything to do with her present problems.
Mrs. Mader underwent an MRI on August 1985, which revealed the disc degeneration and bulging annulus at L-4/5 and the slightly bulging annulus at L-5/S-1. These findings were communicated by GEICO's counsel to Paula Babb, the adjuster handling the file, by telephone on August 23, 1985. At the end of September, GEICO received a letter summary of Dr. Anseman's deposition from its counsel. On October 14, 1985 Ms. Babb received a copy of the MRI report. These events prompted Ms. Babb to place the file on control because the ultimate payment might exceed their regional authority of $25,000. She requested that the reserve authority be set at $100,000. Ms. Babb's last comment in her memorandum of October 16 was that counsel indicated to them that Dr. Anseman was a straight shooter and had not over-elaborated Mrs. Mader's injury.
Ms. Babb testified that the file was turned over to the legal claims department after October 16 and that ended her involvement in the file. Ms. Babb also testified that no action was taken to evaluate the quantum of damages prior to that time because there were uncertainties concerning the extent of Mrs. Mader's damages. Ms. Babb felt that, in spite of Dr. Anseman's opinions and the findings of the MRI, there was nothing to conclusively indicate that Mrs. Mader had anything more than a strain as a result of the accident. Her personal opinion was that it was a strain and without a myelogram no definitive diagnosis could be made. Also she questioned whether the disc problem resulted from the 1983 accident.
Without going further into the events subsequent to October 16, 1985, we find that as early as August and as late as September the defendant, GEICO, had received satisfactory proofs of loss to fully apprise it of plaintiffs' claim. Those facts were as follows: (1) Dairyland had settled with plaintiffs for $15,000 in August; (2) its insureds were at fault in the accident; (3) Suzette Mader was injured as a result of the accident; and (4) the medical evidence *508 available to GEICO showed that Mrs. Mader had a nerve root injury, disc problem and would need surgery in the near future. See Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983).
If GEICO doubted the cause of Mrs. Mader's back trouble it should have requested an independent medical examination. It is interesting to note that GEICO's counsel advised it that he did not feel it would be of much success. We do not think that it was reasonable for GEICO to rely on the opinion of Dr. Robert Rivet, who performed Mrs. Mader's surgery in 1981, to justify GEICO in concluding that she could not have been pain-free prior to the 1983 accident as she told Dr. Anseman. Dr. Rivet last saw Mrs. Mader in October of 1982 and any opinion formed thereafter concerning injuries subsequent to 1983 would have to be based upon speculation, not medical certainty.
We conclude that Dr. Anseman's findings and conclusions in combination with the MRI result should have triggered a forthcoming tender for any undisputed amount of the claim. Mrs. Mader's medicals at the time were slightly in excess of $2,100, and further diagnostic testing would be necessary as well as surgical intervention. These costs alone would exceed the amount of the underlying liability coverage. There can be no dispute that GEICO was liable in some degree to plaintiffs for their damages. Moreover, there was no justification for not making a tender because Mrs. Mader refused to undergo invasive testing and surgery until she weaned her child.
Regardless of any reasonableness of GEICO's position prior to Dr. Anseman's deposition of July 1985, GEICO's actions thereafter must be judged on the basis of his positive opinion evidence given then. In our opinion Dr. Anseman's opinion stood unchallenged. If the MRI report of August 1985 did not link the findings of the MRI to Mrs. Mader's complaints or speak to the question of causation, it did not hurt her case. From that date GEICO should have obtained its own medical opinion to negative the testimony of Dr. Anseman and the MRI report. At that point we deem Mrs. Mader had an undisputed claim for some amount. As we note above the amount was significant. To determine whether or not GEICO acted arbitrarily and capriciously in not making a tender earlier, we do not have to decide what the amount was. The point is that no tender at all was made by GEICO until December 17, 1985. In our opinion this was not timely.
GEICO could have avoided the imposition of penalties and attorney's fees by making a timely tender of a sum which a court of law would determine to be the undisputed amount of the claim. McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La.1985). In McDill the Louisiana Supreme Court discussed the extent of damages issue and stated that where it is shown that "the insurer will be liable for some general damages, the insurer must tender the reasonable amount which is due." This amount must be tendered to show the insurer's good faith and to comply with the contract of insurance. The Supreme Court also said: "The amount that is due would be a figure over which reasonable minds could not differ." We find that defendant, GEICO, acted arbitrarily, capriciously and without probable cause in failing to pay the plaintiffs' claim.
Accordingly, we reverse the judgment of the trial court with respect to the denial of penalties and impose a penalty of 12% of the total amount awarded. As concerns the issue of attorney's fees, no proof was made in the trial court of the value of those fees. However, where the attorney's fees awarded are a result of arbitrary nonpayment of insurance benefits, the award is deemed to be in the nature of a penalty and the value of the attorney's fees need not be proven. Goff v. John Hancock Mutual Life Insurance Company, 497 So.2d 747 (La.App.3d Cir.1986). It is apparent from the record that plaintiffs' attorney faithfully, diligently and with skill prosecuted their claim. Much time and travel were required over the two-year period from the time suit was filed until its resolution by trial. We find that an award of $12,000 is an appropriate *509 award, taking into account the proceedings below and this appeal.
For the reasons assigned herein, the judgment of the trial court denying plaintiffs' claim for penalties and attorney's fees is reversed. A penalty of $12,240 is awarded in favor of the plaintiffs and against defendant, GEICO, and an attorney's fee of $12,000 is awarded in favor of the plaintiffs and against the defendant, GEICO. The judgment of the trial court is affirmed in all other respects. The costs of this appeal are assessed to the defendant-appellee, GEICO.
REVERSED IN PART; AFFIRMED IN PART.