545 So.2d 624 (1989)
Gregory C. SHEPARD, Son of/and Janice Shepard, Wife of/and Sidney C. Shepard, Jr.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 88-CA-0362.
Court of Appeal of Louisiana, Fourth Circuit.
May 25, 1989.
*625 James E. Churchill, Jr., Metairie, for plaintiffs-appellees.
Timothy G. Schafer, Schafer & Schafer, New Orleans, for defendant-appellant.
Before BARRY, BYRNES and PLOTKIN, JJ.
*626 PLOTKIN, Judge.
The issues in this appeal are the liability, insurance coverage, attorneys' fees and penalties of an uninsured motorist insurer.

PROCEDURAL HISTORY
Defendant, United Services Automobile Association (USSA), the uninsured motorist (UM) insurer, appeals judgments in favor of Sidney Shepard, as curator for his son, Gregory Shepard (Gregory), and Gregory's parents, Sidney and Janice Shepard (Shepards), individually. The trial court held USAA liable to Gregory for the policy limits of $200,000 and 12 percent penalties, plus $80,000 in attorney's fees for arbitrary and capricious conduct. USAA was held liable to the Shepards for their loss of consortium in the sum of $100,000 each. We affirm Gregory's judgment and reverse the Shepard's judgment.
On May 21, 1983, Gregory was driving a 1978 Chevrolet Camaro, owned by his parents, while in the employ of Pizza Man Commissary. He was stopped facing south, in obedience to a stop sign, on West Village Square at West Judge Perez Drive (La. State Highway 39) in Chalmette, La.
Darren Torres (Torres) was proceeding west on West Judge Perez Drive, operating a 1978 Chevrolet pickup truck, owned by Winston J. Armond Jr., his father-in-law. As Torres approached West Village Square, he swerved from the left lane to the right lane, because of a phantom vehicle which was entering the intersection immediately ahead. Torres lost control of his truck, which struck the passenger side of Shepard's vehicle. The accident caused permanent devastating brain damage, which will render Gregory a helpless dependent the rest of his life.
Initially the plaintiffs filed claims against multiple parties. All were settled or dismissed except those involving USAA, the uninsured/underinsured motorist insurer.
The Shepards had two policies with USAA, one which insured a 1978 Chevrolet Camaro, which was involved in the accident, and a 1980 Oldsmobile Cutlass Supreme. Each policy contained Uninsured Motorist Protection, with limits of $100,000 for each person and $200,000 for each occurence.
The district court granted a summary judgment in favor of Gregory, holding that he could stack the policies, which provided coverage up to $200,000. This judgment is not appealed. The parties agreed that the issues of attorneys' fees and penalties would be reserved for trial.
The district court also granted a summary judgment in favor of USAA, dismissing the Shepards' individual loss of consortium claims under the UM coverage. Subsequently, the district court vacated this judgment and granted a new trial.
Prior to trial the parties stipulated that Gregory's medical condition and quantum were not issues, and that if Torres was liable, Gregory's injuries would entitle him to the full amount of the per person limits, regardless of whether the two policies could be stacked.
The jury awarded Sidney Shepard, as curator for Gregory, $200,000, plus 12 percent penalties from June 6, 1983, the date that they found USAA received satisfactory proof of loss from the Shepards and $80,000 in attorneys' fees for USAA's arbitrary and capricious failure to pay benefits to Gregory, plus interest from August 6, 1983 and all costs.
The trial judge awarded $100,000 plus interest to each of the Shepards for their loss of consortium claims. It held that the Shepards were entitled to recover from USAA because their claim constituted a separate bodily injury cause of action pursuant to La.C.C. art. 2315.

LIABILITY AND TRIAL TACTICS
The disputed question of liability was presented to the jury, which found Torres soley at fault and the cause of the accident. USAA contends that plaintiffs' trial tactics, the admission of inflammatory evidence and incorrect jury instruction prejudiced the jury against it.
Each side presented extensive lay and expert testimony on the issue of fault, relating to speed and intoxication.
*627 USAA, properly, complains that the plaintiffs' trial tactics were inflammatory and prejudicial. After the defendant began its case, and presented the plaintiffs' former expert witness, Gregory was brought into the courtroom, in a wheelchair, semi-comatose and unable to talk. Although Gregory had the right to be in the courtroom, it was improper and untimely.
The issues before the jury was Torres' fault, USAA's attorney fees and penalties. Gregory's presence was irrelevant and unnecessary in view of the stipulation and the issues to be decided. The only purpose of his appearance was to generate sympathy from the jury.
When the body or body parts of a party or witness are to be shown to the jury, the following policy is adopted to balance the rights of the litigants. If a party is not present during trial, the reasons for the absence should be conveyed to the trial judge. Specific arrangements for the demonstration or appearance of a party should be confected. The appearance of a party should be scheduled during the presentation of that party's case-in-chief. In the event there are compelling reasons why this cannot be accomplished, the trial court must instruct the jury why the party is brought into the courtroom, out of order, and that they should not be influenced by prejudice, passion or sympathy for the injured party because of the untimely appearance.
In this case we find no reversible error resulting from Gregory's untimely appearance at trial. Although his appearance ordinarily would have influenced quantum, that issue was not before the court because of the stipulation. As to fault, it is arguable that the jury might be sympathetic; however, the evidence in the record supports the finding that Torres was solely liable.
Appellants claim that the jury was prejudiced when plaintiffs' counsel asked a defense witness about his prior arrests. The trial court sustained defendant's objection. It is well settled that evidence of arrest is not admissible for impeachment purposes except when it is independently relevant to show bias or interest. State v. Robinson, 337 So.2d 1168 (La.1976); La. C.E. art. 609.
Plaintiff's counsel argues that, because the witness denied prior arrests in a deposition, he was entitled to impeach him, to show that he committed perjury at the deposition. We find this argument spurious.
Impeachment of a witness is the process, at trial, to impair a witness's credibility. A witness cannot be impeached by merely proving that he was arrested. If plaintiffs' counsel elected to impeach the witness to show he prevaricated in the deposition, it was necessary to lay a foundation for the impeachment. In this case, if the witness may have made a prior inconsistent statement in his deposition, which may have been inconsistent with the courtroom testimony, the proper procedure is to lay a foundation for the admission of the evidence. This permits the trial judge to determine the relevance and admissibility of the evidence, without causing prejudice or injustice to a party.
In the instant case, plaintiff counsel's direct references to the witnesses prior arrest were improper. However, these remarks do not constitute reversible error in this case. The court sustained defendant counsel's objection. We presume the jury followed the court's instructions to disregard the question and answer completely. Furthermore, we note both parties referred to the arrest issue in their closing argument without objection, which waived the right to claim error on appeal. This assignment of error is without merit.
USAA timely objected to the trial court's jury instruction that the driver of a motor vehicle must at all times be able to react to unpredictable circumstances. The insurance company argues on appeal that this improper statement of the law placed an insurmountable burden on Torres to avoid unsuspected danger.
La.C.C.Pr. art. 1792(B) provides that the court shall instruct the jury on the law applicable to the case before them after a trial of the case and the presentation of all *628 the evidence to the jury. We find merit in the standard of appellate review of jury instructions recently expressed by our brothers in the First Circuit.
The adequacy of jury instruction by a trial court must be determined in the light of the jury instruction as a whole... The standard of appellate review is that the mere discovery of an error in the trial judge's instruction does not itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. (Citations omitted.)
The trial judge must give all requested instructions which are material and relevant to litigation ... He need not use the exact language submitted by a party but the instructor must adequately reflect the law and issues presented. Purvis v. American Motors Corporation, 538 So.2d 1015 (La.App. 1st Cir.1989), citing Lincecum v. Missouri Pacific Railroad Company, 452 So.2d [1182] at 1182, 1190 [La.App. 1st Cir.1984].
The appellant contends that the jury instruction given was improper and since it pertained to the major liability issue constitutes reversible error. We disagree with this argument. We find that the instructions when viewed as a whole were not so misleading as to confuse the jury in its determination of liability. The jury received instructions on the sudden emergency defense and it was explained that this defense allowed USAA to argue that Torres had encountered an unforeseen circumstance over which he had no control. The instructions may have contradictory elements but as a whole are not so incorrect or inadequate as to constitute reversible error.
We therefore conclude that, although trial tactics employed by the plaintiffs' counsel were improper, no reversible error resulted. Additionally, the jury instructions objected to by USAA, when viewed together with all the instructions given, did not give rise to the gravity of error that would cause this court to reverse the jury's verdict. The liability of Torres for the accident was not affected by untimely presentation of the injured plaintiff, by the questions relating to the arrests of one of the defense witnesses or by a jury instruction that by itself could have mislead the jurors. We affirm the finding that Torres was solely at fault for the accident.

LOSS OF CONSORTIUM AND INSURANCE COVERAGE
USAA asserts that the Shepards' loss of consortium award is not a separate bodily injury claim and that once the per person limits of the policy are exhausted a person asserting a loss of consortium claim cannot recover as an individually injured person.
There is no dispute that the Shepards have a right of action for loss of consortium, service and society arising out of the injury to their son. La.C.C. art. 2315. The parties stipulated that Gregory's damages exhausted the policy's monetary limits of coverage under both policies. The trial judge awarded Mr. and Mrs. Shepard $100,000 each, against each USAA policy, in addition to Gregory's judgment.
The USAA policy issued to the Shepards provides the following language:
"(It) will pay damages which a covered person is legally entitled to recover from the ... operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by a covered person; and
2. Caused by an accident.
It is undisputed that the Shepards were covered persons and that Torres was the operator of an uninsured (underinsured) motor vehicle which caused the accident.
The Shepards contend that their consortium claims, which resulted from their son's bodily injury and their own bodily injuries caused by emotional distress, are within the terms of the policy.
Although this court has not addressed the issue of whether a loss of consortium claim constitutes a bodily injury and whether the claim is restricted to the single monetary per person limits of the policy, our *629 brothers in the First and Fifth Circuits have examined the issue.
In Albin v. State Farm Mutual Automobile Ins. Co., 498 So.2d 171 (La.App. 1st Cir.1986), the court found that a loss of consortium claim by a wife was really a claim for "damages due to bodily injury" of her husband under the uninsured motorist policy. The court stated that there was a right of action that could be paid under the policy's coverage for single bodily injury but, in that case, the single-injury limits had already been exhausted by the settlement with the husband. Id. at 173. The court held that loss of consortium, especially in the absence of any physical manifestations resulting from the loss, is not a bodily injury within the meaning of the policy.
In a similar case, the Fifth Circuit found that a per person policy limit did not eliminate claims for loss of consortium or controvert public policy, but merely disallowed any recovery above the policy limits. Carroll v. State Farm Ins. Co., 519 So.2d 265 (La.App. 5th Cir.1988). In Carroll, when his wife was injured in an automobile accident, the husband sued for loss of consortium and back injuries as a second person sustaining injury even though he was not involved in the automobile accident. Mr. Carroll claimed that increased housework after his wife's accident aggravated his prior back injury. The court found that there was no reasonable interpretation of the policy under which coverage could be afforded above the limits of per person coverage, which had already been exhausted, since Mr. Carroll had alleged in his pleadings only aggravation of a pre-existing injury. However, the court interpreted the Albin case as allowing recovery on the policy as a separately injured person if the party had been able to show some physical manifestations of the injury.
We agree with the result of the opinions expressed by the First and Fifth Circuit Courts. The loss of consortium claim is a covered claim up to the policy limits of the per person injury for a single bodily injury. However, the Albin and the Carroll cases result in some confusion concerning the definition of the term "bodily injury" as it applies to the meaning of the policy and the need for physical manifestations of injury. Thus, the coverage under the uninsured motorist policy for a loss of consortium claim needs further analysis.
Louisiana has established a cause of action for loss of consortium, service and society. La.C.C. 2315 The modern definition of loss of consortium was set out in Berger v. Weber, 411 Mich. 1, 303 N.W.2d. 424, 435 (1981) as follows:
a harm to relational interest which occurs when the other party to the relationship suffers physical harm (invasion of an interest or personality). Because loss of consortium is not an injury to the person who bore the direct impact of the defendant's negligence but to another person whose relationship to the primary victim is diminished as a consequence, it may be regarded as a secondary layer of tort liability to the primary victim.
As the Berger opinion suggests, a loss of consortium action is a derivative claim of the primary victim's injuries. This reasoning is applicable to the case before this court. The derivative claim does not come into existence until someone else is injured. Thus, the parents of Gregory Shepard did not suffer a harm to their relational interest until Gregory suffered his injuries. However, because the right of action in the loss of consortium claim is derived from Gregory's injuries, recovery is restricted to the per person limits. Therefore, if the injured party exhausts the per person limits, the derivative claim is extinguished. In the case at bar, the Shepards' son exhausted the per person limits of the policy which then extinguished the derivative loss of consortium claim by his parents.
The courts in Albin and Carroll wrestled with the issue of whether there has to be a showing of physical manifestations of injury by a party claiming loss of consortium. Neither court allowed recovery, as a second bodily injured person, to a person claiming loss of consortium. Additionally, in both cases, the single bodily injured person limits had been exhausted by the person actually injured in the accidents. *630 Therefore, it is difficult to discern whether the pronouncements on the necessity for physical manifestations of bodily injury refer to any loss of consortium claim or, in the alternative, refer only to the threshold for the claim to qualify as a second bodily injury.
In the case at bar, the Shepards appear to have interpreted the previous opinions as requiring physical manifestations of injury to recover as a second person with bodily injuries. The Shepards ineffectually attempted to include themselves within the physical manifestation of injury doctrine, in order to recover as separately injured persons under the bodily injury provisions of the policy. The record indicates they were asked only three or four questions about their physical injuries. Their responses clearly indicate that they failed to prove any physical injuries. No expert medical testimony was offered on their behalf. We find that they did not prove that they sustained any physical injuries arising out of their son's injuries.
Actually, an interpretation of the physical manifestation of injury doctrine is unnecessary under the most recent Louisiana jurisprudence. We agree with the reasoning and conclusions expressed in a recent Third Circuit opinion, LeJeune v. Rayne Branch Hospital, 539 So.2d 849 (La.App. 3rd Cir.1989), in which, for the first time, a Louisiana court recognized a cause of action for mental distress experienced by a claimant resulting from injuries sustained by a third person. Therefore, limitation of recovery to a showing of physical manifestations of injury would no longer be valid policy under the analysis adopted in the LeJeune case.
We hold that loss of consortium claims are included within the definition of bodily injuries. We do not require physical manifestation of injury as a prerequisite to recovery for loss of consortium. However, any loss of consortium claim is only derivative, arising out of injuries caused to others. Such a claim is therefore restricted to the monetary limits placed in the insurance policy, to a per person total.
We reverse the awards of $100,000 each to Sidney and Janice Shepard. The derivative nature of the claims limits the recovery to the $200,000 limit of the stacked UM policies. which was exhausted by Gregory's claim. The loss of consortium claims of the Shepards were therefore extinguished.

PENALTIES, INTEREST AND ATTORNEY FEES
USAA objects to the jury awarding Gregory $80,000 in attorney fees, penalties of 12% and legal interest on the total award from August 6, 1983.
La.R.S. 22:658 provides that when an insurer fails to pay its insured timely, and is found arbitrary and capricious for the non-payment, the insurer shall be liable for all resonable attorney fees for the collection of the claim. However, the burden of proof is upon the insured to provide a satisfactory proof of loss.
"A `satisfactory proof of loss' within the meaning of La.R.S. 22:658 is that which is sufficient to fully apprise the insurer of the insured's claim. Hart v. Allstate Insurance Co., 437 So.2d 823 (La.1983). To establish a `satisfactory proof of loss' of an uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages." McDill v. Utica Mutual Insurance, 475 So.2d 1085, 1089 (La.1985).
The record demonstrates that USAA received notice of the accident May 21, 1983. A letter of representation from Shepard's attorney and notice of a UM claim on June 6, 1983, and the police report on June 15, 1983. Their adjuster recommended payment in July, 1983. There is sufficient evidence for the jury to conclude that satisfactory proof of loss was furnished to USAA as required by law.
Although, both sides presented evidence of when USAA was provided with satisfactory proof of loss and demand, the jury *631 determine that the disputed date was June 6, 1983. It further decided that USAA was arbitrary or capricious for not paying the claim within 60 days as provided by La.R.S. 22:658. We find that the jury was not manifestly erroneous by holding that USAA acted arbitrarily or capriciously and that June 6, 1983 was the valid date it received satisfactory proof of loss and demand.
USAA claims that the attorney fees awarded are excessive. That the proper standard for assessing attorney fees, in this type of case, should be based on the services needed to effect recovery, the degree of the professional skill and ability exercised, the volume of work performed, the time devoted to the case and the amount in controversy. May v. Market Ins. Co., 373 So.2d 763 (La.App. 3 Cir.1979). USAA maintains that it was prejudicially improper to permit reference to, during direct examination and in closing argument, the existence of plaintiff's employment contract with his attorney, which contained a 40% contingent fee.
The record is capacious. It involves multiple parties, claims and trials. Reasonable attorney fees are within the fact finding function of the jury. Nelson v. Allstate Ins. Co., 464 So.2d 1015 (La.App. 1st Cir. 1985). The record supports, based on a reasonable hourly fee and the correct jury instructions which are unobjected to, the award of $80,000.
However, the court also relied upon McDill, supra for the authority that the contingency fee contract was admissible and a factor for determining the award. Although only footnoted by the Supreme Court, we find that the Supreme Court intended that the fact finder consider the employment contract when deciding attorney fees as one of the considerations in the adjudication of attorney fees.
In addition to the contract, the jury had sworn testimony on the issue of attorney fees from counsel for both the Shepards and USAA. The jury's conclusions with regard to assessment of attorney fees under the statute governing payment of such claims is in part a factual determination and should not be disturbed absent a finding that is manifestly eroneous. Furthermore, where the attorney fees awarded are the result of arbitrary nonpayment of benefits, some courts have held that the value of the attorney's fees need not be proven because the award is penal in nature. Mader v. Babineaux, 526 So.2d 505 (La. App. 3rd Cir.1988).
We conclude that the jury properly considered the contingency fee contract as one of the factors in assessing reasonable attorney fees. After reviewing the record, we find no manifest error in the award of reasonable attorney fees. We therefore affirm that part of the judgment awarding $80,000 to plaintiffs' attorney.
The 12 percent penalty provided by La.R.S. 22:658 applies to the total amount of the loss of $200,000. The judgment decree may be unclear as to whether the 12 percent is a per annum calculation or a one-time penalty, but Louisiana jurisprudence is clear on the interpretation of La. R.S. 22:658 as it applies to the calculation of the penalty. In Gagnard v. Travelers Insurance Company, 380 So.2d 191 (La. App. 3rd Cir.1980), the court reiterated the principal that the 12 percent penalty is calculated on the loss alone and does not include any legal interest that may become due. Therefore, the 12 percent is to be applied to the total amount of the loss and applied as a one-time penalty. The plaintiffs willingly concede this point in their appellate brief.
The final issue is the date legal interest accrues to a UM claimant. The judge decreed that legal interest originates from August 6, 1983 for Gregory's award. USAA alleges that suit was filed May 18, 1984, and, therefore, if legal interest is due it is from this date of judicial demand. Because the jury determined USAA had satisfactory proof of loss as of June 6, 1983, the plaintiffs contend that the obligation became due on August 6, 1983, sixty days later.
We find the judge's decree on the date that legal interest is due to be in error. It is well settled that the interest awards *632 start from the date of judicial demand. The Louisiana Supreme Court affirmed this holding, as it relates to uninsured motorist claimants, in Ainsworth v. Government Employees Ins. Co., 433 So.2d 709 (La. 1983). The plaintiffs contend that the case at bar presents a unique issue because of the finding that USAA was arbitrary and capricious in its failure to pay the claim in a timely fashion. We find no support for such a distinction and therefore reverse the trial court, holding that legal interest is due from May 18, 1984, the date of judicial demand.
For the above and foregoing reasons, we affirm the judgment to Gregory Shepard in the amount of $200,000. The judgment in favor of Sidney Shepard and Janice Shepard in the amount of $100,000 each is reversed. We affirm the award of $80,000 in attorney's fees and the 12 percent penalty for a finding of arbitrary and capricious behavior in violation of La.R.S. 22:658. We reverse the trial court on the issue of legal interest finding that all legal interest is due from the date of judicial demand.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART.
BARRY, J., concurs with reasons.
BARRY, Judge, concurring with reasons.
I do not subscribe to the majority's dictum setting forth a "policy" concerning the courtroom appearance of an injured plaintiff.
The trial judge is in the best position to make that determination.
Here, the trial judge knew that quantum was not an issue. To dictate a cure when there is no symptom attempts to create a solution in a vacuum, and is superfluous.