690 So.2d 825 (1996)
Marsha HOLLINGSWORTH, et al., Plaintiff-Appellee,
v.
Gordon S. BOWERS, Jr., M.D., et al., Defendants-Appellants.
No. 96-257.
Court of Appeal of Louisiana, Third Circuit.
December 30, 1996.
Rehearing Denied February 20, 1997.
*827 Charles Henry Munsterman, Alexandria, for Marsha Hollingsworth, et al.
Frederick Bernard Alexius, Catherine G. Brame, Alexandria, for Gordon S. Bowers, M.D., et al.
Charles T. Williams, Jr., John Elliott Baker, Metairie, for Louisiana Patients Compensation Fund.
John Edward Morton, Alexandria, for Louisiana Trial Lawyers Assoc., etc.
Before THIBODEAUX, COOKS, PETERS, AMY and SULLIVAN, JJ.
COOKS, Judge.
This medical malpractice suit involves the birth of a child and the injury allegedly sustained by him during the delivery process.

FACTS
Marsha Hollingsworth became an obstetrical patient of Dr. Gordon S. Bowers, Jr. in September 1990. Marsha was approximately twenty-seven weeks pregnant with her first child. The child's expected date of birth was December 12, 1990. Prior obstetrical care was provided at Huey P. Long Hospital.
A glucose tolerance test revealed Marsha was a gestational diabetic, a condition caused by her pregnancy. Dr. Bowers referred her to an internist for diabetes management. He further referred her to Rapides Home Health Care to insure frequent evaluations and adequate control of her diabetes.
On November 13, 1990, Marsha appeared at Huey P. Long Hospital's emergency room complaining that she could not feel any fetal movement. After examination, an emergency physician diagnosed that she was suffering from preeclampsia (elevated blood pressure). A sonogram revealed the fetus was six and one half (6½) to seven (7) pounds in weight. The physician recommended that Marsha allow the hospital to perform an amniocentesis to assess the lung maturity of the fetus in hope that the baby could be delivered a month early. This advice frightened Marsha who instead returned to Dr. Bowers for a second opinion. According to Marsha, Dr. Bowers reassured her everything would be fine and she would have a normal vaginal delivery.
On December 5, 1990, Marsha visited Rapides Women's Hospital showing signs of irregular contractions. She was prepared for delivery on December 6, 1990. When the infant's head cleared the vaginal canal, Dr. Bowers recognized a medical phenomenon known as shoulder dyscotia was impeding successful delivery of the infant. As we understand, shoulder dyscotia occurs when the baby's shoulder hangs up under the pubic bone in the birth canal, arresting the progress of the baby's complete delivery through the canal. Discovering the presence of shoulder dyscotia, Dr. Bowers ordered the nurses to perform the McRobert's maneuver. This procedure involves pulling the patient's legs back to her chest while a nurse applies direct pressure to the pubic bone. Carol Ponthieux was the nurse who applied the pressure. John Rosenthal, the infant's father, was present in the delivery room. He testified that Nurse Ponthieux stood upon a stool and applied pressure to Marsha's stomach with her forearms and "the baby just popped out."
The infant's right arm was flaccid following delivery. Once examined, the attending physicians confirmed the infant sustained a permanent injury to the brachial plexus nerves of the left shoulder. The injury caused chronic nerve damage in the baby's left arm and hand resulting in complete loss of motor and sensory function in both. There is little hope medically that the child will regain use of his left arm and hand.
After filing a timely complaint with a medical review panel, Marsha filed suit individually and on her son's behalf against Dr. Bowers, his insurer, and Rapides Women's Hospital. Damages were sought along with all past, present and future medicals. The mother also filed a claim for loss of consortium. On June 22, 1993, the plaintiff dismissed Rapides Regional Medical Center with prejudice. After trial, the judge rendered written reasons for judgment on October 20, 1994. He found:

*828 "Dr. Gordon Bowers failed to use reasonable care and diligence, along with his best judgment in the application of his obstetrical skills in this particular incident. As a result of either his lack of knowledge or skill or the failure to exercise the degree of care necessary under the particular circumstances of this case, his negligence caused young Jonifer's injury." The trial judge awarded damages as follows:

General Damages $500,000
Loss of Earning Capacity $250,000
Loss of Consortium for Marsha Hollingsworth $250,000

General damages were reduced to $250,000 to comply with the statutory cap of La.R.S. 40:1299.42(B). The trial court also found the child was entitled to all related future medical benefits as they accrue. Before final judgment was entered, plaintiff filed a Motion for Summary Judgment urging that the limitation of liability granted health care providers by legislative enactment of La.R.S. 40:1299.42(B) is unconstitutional. In Supplemental Written Reasons for Judgment, the trial judge found La.R.S. 40:1299.42(B) met constitutional muster, but stated the limitation of liability applied to each patient, resulting in separate caps for the mother and child. Final judgment was entered on September 28, 1995.
Dr. Bowers, and his insurer, St. Paul Fire and Marine Insurance Company, appealed the judgment of the trial court asserting the following assignments of error:
1. The trial court erred in finding that fundal pressure created by the nurse caused the injury to the infant's brachial plexus' or alternatively the trial court erred in holding Dr. Bowers vicariously liable for the negligence of the nurses.
2. The trial court erred in finding Dr. Bowers was negligent and that this negligence caused the infant's injury.
3. The trial court erred in applying an additional statutory cap to Marsha Hollingsworth's award for loss of consortium contrary to La.R.S. 40:1299.42(B).
4. The awards for general damages and loss of earning capacity are clearly excessive.
5. The trial court erred in awarding future medical benefits without specifying an amount pursuant to La.R.S. 40:1299.43(A)(2).
6. The award to Marsha Hollingsworth for loss of consortium is excessive.
7. The trial court erred in taxing appellants' with costs for plaintiffs' experts, depositions and trial materials.
The Louisiana Patient's Compensation Fund and Oversight Board asserted the following errors were committed by the trial court:
1. The trial court erred in interpreting the Louisiana Medical Malpractice Act to permit each plaintiff to recover to the extent of the limitation provided by the Act.
2. The trial court erred in awarding future medical benefits to Jonifer Hollingsworth without specifying an amount pursuant to La.R.S. 40:1299.43(A)(2).
Plaintiffs have answered the appeal asserting the limitation of liability provision of La.R.S. 40:1299.42 is unconstitutional and the trial court's entire award of $750,000 to the child is recoverable. However, in brief, plaintiffs recognize this court's obligation to follow Butler v. Flint Goodrich Hospital of Dillard University, 607 So.2d 517 (La.1992). In that case the Louisiana Supreme Court held the $500,000 cap of La.R.S. 40:1299.42 was constitutional. Plaintiff acknowledged this issue was urged on appeal merely to preserve it for revisiting by the Louisiana Supreme Court. We, therefore, will not entertain it further.

LIABILITY
A plaintiff's burden of proof in a medical malpractice action against a physician is found in La.R.S. 9:2794(A) which provides:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the State of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where *829 the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
In Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276-1277 (La. 1991), the Supreme Court discussed the burden of proof and appellate standard of review in such cases stating:
In a medical malpractice action against a physician, the plaintiff carries a two-fold burden of proof. The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained. LSA-R.S. 9:2794; Smith v. State through DHHR, 523 So.2d 815, 819 (La.1988); Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 723 (La.1986). Resolution of each of these inquiries are determinations of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La.1991); Smith, 523 So.2d at 822; Rosell v. ESCO, 549 So.2d 840 (La.1989); Hastings, 498 So.2d at 720 .... if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) .... where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d at 844; Housley, supra.

Dr. Bowers admitted a physician who applies fundal pressure knowing shoulder dystocia is present fails to meet the standard of care expected during delivery. His admission was confirmed by a number of medical experts. Fundal pressure was applied, in this case, to fascillitate release of the infant's head. However, defendants deny applying fundal pressure after discovering the baby's shoulder was lodged under the pubic bone.
Initially, defendants argue the trial court ignored the direct testimony of trained medical personnel, and instead accepted the testimony of lay witnesses to the contrary. A review of the testimony shows the nurses present during performance of the McRobert's maneuver could recall very little of the particulars surrounding the infant's delivery. Karen DeBusk, a nurse on the delivery team, testified she remembered "not a whole lot" of the delivery. She could not recall Carol Ponthieux's presence in the delivery room at the time. Ponthieux, the nurse allegedly applying fundal pressure during the McRobert's maneuver, stated she did not recall the infant's actual delivery, and could not specifically recall whether she used fundal or suprapubic pressure. Joyce Lansdale, the mother's primary nurse, testified while she could recall "some parts" of the delivery, she could not see what type of pressure was applied by Carol Ponthieux. Dr. Bowers was the only witness called by the defendants who testified positively that Carol Ponthieux applied only suprapubic pressure.
Alice Roberts, a nurse's aid in the delivery room, testified she recalled complications developed during the infant's delivery which required Joyce Lansdale to apply pressure to the mother's abdomen. However, according to Roberts, Lansdale could not apply enough pressure, so she was replaced by Carol Ponthieux. Roberts specifically testified that pressure was applied by Ponthieux on the mother's body "between the breast and the upper part of the stomach." The medical experts confirmed such pressure, if applied, *830 constituted unacceptable fundal pressure. Roberts also testified, after cleaning the baby following birth, she noticed the infant's left arm was not moving.
The mother's testimony was similar. She stated the nurses picked up her legs, and Nurse Lansdale "got on top" of her and "tried to push in her rib cage" area. The baby still did not come out and Nurse Ponthieux, who was larger than Joyce Lansdale, came around "and she just got up in my stomach with herher forearms." The baby then delivered after pressure was applied by Ponthieux. John Rosenthal, the baby's father, observed the delivery. He corroborated the testimony of the mother and Alice Roberts that Nurse Ponthieux applied pressure with her forearms on the mother's stomach to achieve release of the baby.
The baby was undisputedly large (nearly 10 pounds at birth) and the mother was suffering from gestational diabetes. These and other factors made the delivery highly risky. The medical testimony revealed diabetics, on average, have larger babies resulting from the extra sugar the developing fetuses are exposed to during pregnancy. Thus, the medical experts all acknowledged vaginal delivery is more difficult with large babies, and the occurrence of shoulder dystocia is more probable. Dr. David Spence and Dr. Randall Brown both stated under the circumstances of this particular delivery the likelihood that shoulder dystocia would occur was high. The trial court found "the possibility of this injury was predictable enough to be considered by the treating physician, and the circumstances were not handled appropriately which brought about errors in the course of the delivery of this infant." After reviewing the record, we cannot say the trial court manifestly erred in so holding.
Defendants also argue if we should uphold the lower court's finding that the nurses applied inappropriate fundal pressure, Dr. Bowers is not legally responsible for their negligence. Defendants argue the nurses were all employed by Rapides Regional Medical Center; and, therefore, Dr. Bowers is not vicariously responsible for their negligence.
Generally, physicians are in charge of all personnel in the operating room during the performance of the operation. Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969), overruled on other grounds, Garlington v. Kingsley, 289 So.2d 88 (La.1974). The exception to this general rule occurs only when the personnel is not under the immediate supervision and control of the physician. Grant v. Touro Infirmary, supra; Parmelee v. Kline, 579 So.2d 1008 (La.App. 5 Cir.), writ denied, 586 So.2d 564 (La.1991). In this case, all the nurses testified that Dr. Bowers was in charge of the delivery room and the delivery. He was at all times present during the birth and in charge of the team of nurses. This assignment of error is without merit.

QUANTUM
To disturb an award of damages by the trial court, the record must clearly reveal the trial court abused its discretion in making the award. Cornett v. State Through W.O. Moss Regional Hospital, 614 So.2d 189 (La.App. 3 Cir.), writ denied, 617 So.2d 907 (La.1993); Molbert v. Toepfer, 540 So.2d 577 (La.App. 3 Cir.), writ granted, 542 So.2d 1389, affirmed, 550 So.2d 183 (La.1989)..

A. General Damages
The trial court awarded $500,000 in general damages to the child, but the award was reduced to $250,000 to comply with the statutory cap imposed by La.R.S. 40:1299.42. Defendants argue even an award of $250,000 is excessive for the injuries suffered by the infant. As support for this position defendants cite two cases, Jackson v. Huang, 514 So.2d 727 (La.App. 2 Cir.1987), writ denied, 519 So.2d 119 (La.1988), and Litton v. Ford Motor Company, 554 So.2d 99 (La.App. 2 Cir.1989), writ denied, 559 So.2d 1353 (La. 1990).
In Jackson, as here, a newborn infant suffered a brachial plexus nerve injury resulting in function loss in the right arm. The trial court awarded $150,000 to the child in general damages. Finding the trial court did not abuse its discretion, the appellate court affirmed the award. In Litton, a five year old boy sustained a shoulder injury in an automobile accident. The trial court awarded the *831 child $850,000 without a breakdown of damages. The appellate court assumed that the award included $411,830 in general damages with the remainder attributed to future loss earnings. The appellate court noted the child suffered from 50% disability of his shoulder rather than total loss of function, and reduced the general damages award to $300,000.
Only after analysis of the facts and circumstances peculiar to this case lead to a determination that the trial court abused his discretion, should we resort to prior awards. Reck v. Stevens, 373 So.2d 498 (La.1979). Even then, prior awards under similar circumstances serve only as a general guide. There is no dispute the injuries suffered by the child were serious and permanently disabling. The prospect of a life without the use of an arm is difficult to quantify in a damage award. We cannot say the trial court abused his discretion in awarding $500,000 in general damages.

B. Loss of Earning Capacity
Defendants argue the trial court erred in awarding $250,000 to the child for loss of earning capacity. Defendants argue the highest reasonable amount of damages for loss of earning capacity is $175,000. This is the amount an appellate court awarded for loss of earning capacity in Jackson v. Huang, 514 So.2d 727 (La.App. 2 Cir.1987), writ denied, 519 So.2d 119 (La.1988). While the facts in Jackson are similar to this case, Jackson was decided nearly ten years ago.
Dr. Randy Rice, plaintiff's expert, testified the child will lose in future earnings $280,997. Defendant's expert, Dr. Pat Culbertson, estimated the child's future loss earning will equal $168,810. The trial court rendered an award between these two figures that also conformed with the statutory cap.
Future loss of earnings projections are by nature speculative. No precise formula exist to arrive at such figures. Rather, the trial court must exercise sound discretion and award an amount that is fair to both litigants without being unduly oppressive to either. Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3 Cir.1985).
In this case, Dr. John Patton testified the child "has a functionless arm," and the arm will never assist him in working. His testimony was joined by that of Dr. Thomas Laborde, who felt "maximum neurological recovery has occurred."
After reviewing the record, we do not find the trial court abused its discretion in awarding $250,000 in future loss earnings to the child.

C. Future Medical
Defendants argue the trial court erred in not awarding a specific amount for future medical care and related expenses. In Kelty v. Brumfield, 93-1142 (La. 2/25/94); 633 So.2d 1210, the Louisiana Supreme Court squarely addressed this issue. In that case, the plaintiffs, parents of a child who was severely brain damaged at birth by a physician's malpractice, recovered by judgment the $500,000 maximum allowed. This recovery did not include any amount or value for medical care and related expenses. The court held when "a child is a patient in need, i.e., that her recovery consumes the whole amount permitted by the $500,000 cap, exclusive of the value of her necessary medical care and related benefits ... by law, consent and judgment she is a patient in need and thus entitled to receive compensation for all unrepaired past, present and future medical and related services necessitated by the malpractice." The trial court's award of future medical in this case follows the reasoning in Kelty.

SEPARATE STATUTORY CAPS
The trial court found Marsha Hollingsworth was entitled to a separate statutory cap because she was also a patient of Dr. Bowers. The trial court relied on the language of La.R.S. 40:1299.42(B)(1) which provides:
The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and costs. (Emphasis added).
*832 The jurisprudence supports the trial court's conclusion that the "Louisiana Medical Malpractice cap is per patient rather than per plaintiff." See, Todd v. Sauls, 94-10 (La.App. 3 Cir. 12/21/94); 647 So.2d 1366, writ denied, 95-206 (La. 3/24/95); 651 So.2d 289; Moody v. United Nat. Ins. Co., 95-1 (La.App. 5 Cir. 5/10/95); 657 So.2d 236, writ denied, 95-2063 (La. 11/17/95); 663 So.2d 713; LaMark v. NME Hospitals, Inc., 542 So.2d 753 (La.App. 4 Cir.), writ denied, 551 So.2d 1334 (La.1989). However, the question presented by this case is whether Marsha's consortium claim derives from injury to her person as a patient or from the injury sustained by her infant son. We considered this issue in Glankler v. Rapides Parish School Board, 610 So.2d 1020, 1036 (La.App. 3 Cir. 1992), writ denied, 614 So.2d 78 (La.1993), and quoted approvingly the following language in Shepard v. State Farm Mut. Auto. Ins., 545 So.2d 624 (La.App. 4 Cir.), writ denied, 550 So.2d 627 (La.1989):
A loss of consortium action is a derivative claim of the primary victim's injuries. The derivative claim does not come into existence until someone else is injured. Because the right of action in the loss of consortium claim is derived from the primary victim's injuries, recovery is restricted to the policy's per person limits. Therefore, if the injured party exhausts the per person limits, the derivative claim is extinguished.
In Glankler, the parent of an injured child was awarded damages for loss of consortium, which if upheld would have exceeded the $500,000 limitation of liability found in La. R.S. 13:5106(b)(1). This court ruled the parent's derivative claim for loss of consortium was extinguished. We note, although Glankler involved the limitation of liability provided in La.R.S. 13:5106(b)(1) rather than the statutory cap mandated by La.R.S. 40:1299.42, the derivative nature of a consortium claims is the same in either case. Accordingly, we must find the $500,000 limitation of liability was exhausted by the child's awards. Thus, the mother's derivative claim is extinguished.

COURT COSTS
Defendants contend the trial court erred in assessing all costs against them. Generally the party cast in judgment is taxed with all costs of the proceedings. See La.Code Civ.P. art.1920. However, the trial court possess discretion to assess costs in any equitable manner and his assessment of costs can only be reversed by an appellate court upon a showing of abuse of discretion. Lognion v. Calcasieu Parish Police Jury, 503 So.2d 1092 (La.App. 3 Cir.), writ denied, 507 So.2d 227 (La.1987). In this case defendants were cast in judgment, and the trial judge did not see fit in his discretion to depart from the general rule found in Louisiana Civil Code article 1920. The trial court's assessment is not legally wrong or abusive.

DECREE
For the foregoing reasons, the judgment of the trial court is amended to reflect the $250,000 consortium award rendered to Marsha Hollingsworth is extinguished because it exceeds the statutory cap of La.R.S. 40:1299.42. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to the parties.
AFFIRMED, AS AMENDED.
AMY, J., concurs in part and dissents in part and assigns reasons.
PETERS, J., concurs in part and dissents in part.
THIBODEAUX, J., concurs in part and dissents in part for the reasons assigned by Judge PETERS and for additional reasons.
AMY, Judge, concurring in part and dissenting in part.
I concur in the result reached by the majority, except for the majority's affirmation of the amount of the trial court's award of court costs against Dr. Bowers and his insurer. After a review of the record, I conclude that, when the trial court assessed the expert witness fees as court costs, the costs were clearly excessive, and therefore, the trial court abused its discretion. Accordingly, I would *833 reverse that part of the judgment and lower the trial court's award of court costs.
PETERS, Judge, concurring in part and dissenting in part.
In its decision, the majority amends the trial court decision to extinguish the $250,000.00 consortium award to Marsha Hollingsworth. The majority concludes that the $500,000.00 statutory cap on recovery provided in La.R.S. 40:1299.42 encompasses both Ms. Hollingsworth's individual claim as well as the child's claim. I respectfully dissent from that portion of the decision.
In reaching its decision, the majority relies on our holding in Glankler v. Rapides Parish School Board, 610 So.2d 1020 (La.App. 3 Cir.1992), writ denied, 614 So.2d 78 (La. 1993). I find Glankler to be distinguishable from the case at hand because of the difference in language of the statutes being interpreted. In Glankler, this court was interpreting the liability limitation for political subdivisions as found in La.R.S. 13:5106(B)(1), which at that time provided:
In any suit for personal injury [involving the state or a state agency or political subdivision], the total amount recoverable, exclusive of medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed five hundred thousand dollars.
(Emphasis added).
The liability limitation of the Louisiana Medical Malpractice Act is found in La.R.S. 40:1299.42(B)(1) and provides:
The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost[s].
(Emphasis added).
Ms. Hollingsworth has a claim for damages for loss of consortium under La.Civ.Code art. 2315. This claim is a separate cause of action from that of the child. See Poirier v. Browning Ferris Indus., 517 So.2d 998 (La. App. 3 Cir.), writ denied, 519 So.2d 105 (La.1987). While recognizing that Ms. Hollingsworth does have a separate cause of action, the majority would include it within that of her child simply because it is derived only as a result of the child's injury. In Glankler, the court was faced with limiting the suit to $500,000.00, while herein, the statute provides for a $500,000.00 limitation on each claim. Thus, I would conclude that La.R.S. 40:1299.42(B)(1) does not limit the separate claims of Ms. Hollingsworth and her child to a single $500,000.00 statutory cap.
Additionally, La.R.S. 40:1299.39(A)(3) defines a "patient" as
a natural person who receives, or should have received, health care from a person covered by this Part and any other natural person or persons who would or may have a claim or claims for damages under applicable law arising out of, or directly related to, the claim or claims of the natural person who receives, or should have received, health care from a person covered by this Part.
(Emphasis added).
Thus, both Ms. Hollingsworth and her child fit within the "patient" definition and have individual claims for damages. The majority cites authority for the proposition that the statutory cap is to apply per patient rather than per plaintiff but ignores the fact that, by statutory definition, Ms. Hollingsworth is also a patient and entitled to exert her separate claim.
Therefore, I would affirm the trial court's decision in all respects.
THIBODEAUX, Judge, concurring in part and dissenting in part.
I, like Judge Peters, dissent from that portion of the majority opinion dealing with separate statutory caps. The majority concludes that the $500,000.00 statutory cap on recovery under La.R.S. 40:1299.42(B)(1) is the maximum amount recoverable on all claims.
The majority emphasizes that the statute is to be applied on a "perpatient" basis. I disagree. Instead, the statute ought to be applied on a "per-claim" theory. The statute provides in part that: "the total amount recoverable for all malpractice claims for injuries to or death of a patient ... shall not *834 exceed $500,000.00 plus interest and costs." The noun "claims" refers to the claim of each person who has a cognizable cause of action, although that cause of action may have its genesis from the injury or death to a patient. The majority incorrectly emphasizes the wrong noun.
Even if the statute may be interpreted on a "per-patient" basis, for the reasons cited by Judge Peters in his concurring opinion, Ms. Hollingsworth should recover.
The injury to Ms. Hollingsworth is personal to her. Her interests are wholly and distinctly separate from that of the injured child. A duty of care exists to each claimant who should be able to effect a remedy for the breach of that duty. A remedy under our law is monetary recovery. To deny recovery would repudiate and subvert the objectives of La.Civ.Code art. 2315, the fountainhead of tort liability in Louisiana. A negligent or at fault tortfeasor has an obligation to repair the damages caused by his negligent act. The failure to allow recovery to Ms. Hollingsworth effectively renounces the remedial basis of tort liability in Louisiana.
Suppose Ms. Hollingsworth had filed a separate lawsuit? Would she be limited to the $500,000.00 statutory cap? Or, for the sake of argument, suppose a wrongful death action were being asserted where several rights of action and several causes of action may be recognized for potential survival action and wrongful death claims? Would the statutory cap apply to deny recovery to a claimant who happens to obtain a judgment after the non-economic cap has been exhausted? To disallow recovery under these hypotheticals would be a consequence I do not believe was intended by this statutory enactment.
Furthermore, in my view, the statute is, at best, unclear regarding whether it refers to a "per-patient" or "per-claim" situation. It has been commonly held that the Medical Malpractice Act is in derogation of the rights of tort victims and should be strictly construed. Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992). Consequently, because certain tort victims' rights are abrogated, any ambiguity must be interpreted against the health care provider and in favor of the injured party, thus allowing a separate recovery by Ms. Hollingsworth.
For the foregoing reasons, I respectfully dissent and, like Judge Peters, would affirm the trial court's judgment in all respects.