566 So.2d 616 (1990)
Kenneth W. EWING, et al.,
v.
Clinton C. AUBERT, M.D., et al.
No. 88-C-2781.
Supreme Court of Louisiana.
March 12, 1990.
Rehearing Denied September 27, 1990.[*]
Dissenting Opinion December 5, 1990.
Michael Colomb, Alfred Speer, Steve Mannear, Poynter, Mannear & Speer, Baton Rouge, for applicants.
Robert L. Kleinpeter, Kleinpeter & Kleinpeter, Donald S. Zuber, Seale, Smith & Phelps, Baton Rouge, for respondents.
Dissenting Opinion of Justice Calogero December 5, 1990.
COLE, Justice.[**]
Plaintiff seeks to challenge the constitutionality of the recovery limitation set forth in the Louisiana Medical Malpractice Act (La.R.S. 40:1299.41 et seq.). The lower courts pretermitted discussion of the constitutional issues, finding there was a settlement between plaintiff and the tortfeasor. For the reasons assigned, we affirm the judgment below and thus resolve the base issue of whether or not there was a settlement.

FACTS
On February 9, 1979, Mrs. Margaret Ewing was admitted to Woman's Hospital in East Baton Rouge Parish. She was in labor for the birth of her fifth child, and was attended by her obstetrician, Dr. Clinton Aubert. Approximately ten and one-half hours after her admission, her uterus ruptured, and she died as a result of a massive amniotic fluid embolism. Her baby (Troy Ewing) survived, but suffered anoxic brain damage prior to his delivery by emergency cesarean section.
On February 5, 1980, two lawsuits were instituted as a result of this incident. The first, bearing the docket number 232,762, was filed by Kenneth Ewing individually and as tutor of his minor children for the wrongful death of Margaret Ewing. The second action was filed by Kenneth Ewing as natural tutor of Troy Ewing for personal injury damages sustained by Troy. Named as defendants in both suits were Dr. Aubert and Woman's Hospital Foundation.[1] The suits were later consolidated.
*617 A medical review panel was convened to review the claims against Dr. Aubert, who was a qualified health care provider under La.R.S. 40:1299.42. On December 2, 1983, the panel found the evidence supported the conclusion that Dr. Aubert "failed to comply with the appropriate standard of care as charged in certain particulars of the complaint."
In March 1984, Dr. Aubert and his insurer filed a "motion to deposit policy limits by insurer and a qualified health care provider" in both suits, seeking to deposit the policy limits of $100,000 per claim into the registry of the court. The motions provided in pertinent part:
4.
Movers now show that the health care provider and the insurer for the health care provider and the representatives of the Commissioner of Insurance and particularly from the Patient's Compensation Fund, have not been able to agree on a settlement or compromise of the claim set forth by petitioner and petitioner is demanding sums greatly in excess of the coverage provided by St. Paul Fire and Marine Insurance Company and the limits of liability established for Clinton C. Aubert, M.D., as a qualified health care provider.
5.
Movers therefore desire to take advantage of the provisions of LSA-R.S. 40:1299.44(C)(5) by paying the full coverage of $100,000 by depositing the same into the Registry of the Court to be distributed by the Court, if and when the Court makes a final decision as to the sums due petitioners from the Patient's Compensation Fund, all in accordance with law.
WHEREFORE, movers submit herewith its check payable to H.M. Cannon, Clerk of Court, Nineteenth Judicial District Court, in the amount of ONE HUNDRED THOUSAND AND NO/100 ($100,000) DOLLARS dated March 13, 1984 with the request that the same be deposited with the Clerk of Court, under the provisions of LSA-R.S. 40:1299.41, et seq., as amended, and that St. Paul Fire & Marine Insurance Company, the health care insurer, and Clinton C. Aubert, M.D., the qualified health care provider, be relieved from any further liability in the premises and for such additional relief as the law, equity and nature of the case may permit.
On March 16, 1984, the trial court signed identical orders pursuant to the motions:
IT IS ORDERED that St. Paul Fire & Marine Insurance Company and Clinton C. Aubert, M.D., the insurer of the health care provider and the health care provider, respectively, be permitted to deposit the sum of $100,000 into the Registry of the Court in the above entitled and numbered cause pursuant to the provisions of LSA-R.S. 40:1299.41, et seq., as amended, and that the funds be held subject to being distributed at a later date in keeping with the applicable statutes regulating and governing the same.
In May 1984, plaintiff, the Louisiana Patient's Compensation Fund (PCF), the Office of the Attorney General and the Office of the Commissioner of Insurance filed a "joint petition for authorization to settle a medical malpractice claim" in suit number 232,762, the wrongful death suit. Dr. Aubert and his insurer filed a waiver of service and delays for responsive pleadings. The trial court approved the settlement. The signed judgment contains no reservation of rights against any defendant. Pursuant to the settlement terms, the court ordered the PCF to pay plaintiff $400,000, plus $200,000 in accrued interest, and further ordered that the $100,000 deposited into the registry of the court by Dr. Aubert and his insurer, plus accrued interest, be surrendered to plaintiffs. The wrongful death case then proceeded to trial, with Woman's Hospital as the sole defendant. The jury reached a verdict in favor of Woman's Hospital and the trial court rendered judgment accordingly. The judgment was affirmed on appeal. Ewing v. Aubert, 532 So.2d 876 (La.App. 1st Cir. 1988). It became final upon this court's denial of plaintiffs' application for writs. Ewing v. Aubert, 551 So.2d 1333 (La.1989). *618 We note plaintiffs never contended they reserved their rights against Dr. Aubert in the wrongful death suit, even though all pertinent documents were identical to those in the personal injury suit.
In May of 1985, the PCF filed a petition of intervention in suit number 232,763, the personal injury suit asserted on behalf of Troy Ewing by plaintiff as natural tutor. The remainder of this opinion deals solely with that suit, which is the only one now subject to adjudication.
The intervention filed by the PCF in the personal injury suit stated Dr. Aubert paid into the registry of the court the full coverage of his medical malpractice liability policy pursuant to La.R.S. 40:1299.44(C)(5). It further stated the PCF was therefore liable for the remainder of any damages that may be due up to the statutory limit of $500,000. Plaintiff admitted both of these allegations in his answer to the intervention. In addition, he acknowledged that "if this court were to execute an Approval of Payment from the Patient's Compensation Fund for the amount stated in Paragraph 6 of the Petition of Intervention [$400,000], petitioner will have recovered to the fullest extent permitted by statute from Clinton C. Aubert and the Patient's Compensation Fund."
In June 1985, plaintiff, the PCF, the Office of the Attorney General and the Office of the Commissioner of Insurance filed a "joint petition for authorization to settle a medical malpractice claim" in suit number 232,763, the personal injury suit. Dr. Aubert and his insurer waived service and delays for responsive pleading. The trial court again approved the settlement, which contained no reservation of rights against Dr. Aubert or his insurer.[2] Pursuant to the settlement terms, the court ordered the PCF to pay plaintiff $400,000 in payment of the liability claim, plus $200,000 in accrued interest, and ordered that the second $100,000, deposited by Dr. Aubert in the registry of the court, plus accrued interest, be surrendered to plaintiff. The record shows that on July 1, 1985, the clerk of court made a check in the amount of $112,808.27 payable to plaintiff.
On October 29, 1985, plaintiff filed an "amending and supplemental petition" in the personal injury suit naming as defendants Dr. Aubert and Woman's Hospital. Plaintiff contended in this petition, for the first time, that the $500,000 limitation in La.R.S. 40:1299.42 was unconstitutional.
Dr. Aubert and his insurer filed a motion for summary judgment, contending plaintiff's claims had been settled. After a hearing, the trial court denied the motion without reasons. Dr. Aubert and his insurer applied to the court of appeal for supervisory writs. The court of appeal granted a writ in part.[3] It concluded plaintiff was not entitled to judgment in excess of the statutory limits of the medical Malpractice Act and ordered the trial court to enter summary judgment in Dr. Aubert's favor. The trial court entered judgment accordingly and dismissed plaintiff's petition.
Plaintiff appealed, assigning as errors the trial court's granting of summary judgment in favor of Dr. Aubert and his insurer, and its failure to address plaintiff's constitutional claims. The court of appeal affirmed, concluding a settlement took place between plaintiff and the defendants, Dr. Aubert and his insurer. Ewing v. Aubert, 532 So.2d 882 (La.App. 1st Cir.1988). Specifically, the court noted:
By acquiescing in the accomplishment of the objective of the Medical Malpractice Act, by withdrawing the statutory limits from the registry of the court, plaintiff effected a release of Dr. Aubert and his insurer from further liability. It is of no moment that the Louisiana Supreme Court, in Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985), held on rehearing that prohibiting malpractice judgments in excess of $500,000.00 classified individuals because of their physical condition *619 and may be unconstitutional. Plaintiff was certainly free to raise the issue of the constitutionality of the Act prior to Sibley, and prior to accepting consideration in exchange for the settlement of a claim.
532 So.2d at 884-85.
Plaintiff then applied to this court. We granted certiorari to more fully consider the issues raised by this case. Ewing v. Aubert, 551 So.2d 1331 (La.1989).

ANALYSIS
Plaintiff relies on paragraph # 15 of the joint settlement petition filed by him, the PCF, the Office of the Attorney General and the Office of the Commissioner of Insurance. It reads:
In consideration of the above payments, Claimants show that they desire to more fully, finally and forever release the Joint Petitioners from the claims for the general damages suffered by Troy Edward Ewing pursued in the matter styled "Kenneth W. Ewing, et al. versus Clinton C. Aubert, et al." bearing docket number 232,763 on the docket of the 19th Judicial District Court, the release to be specifically limited to the claims against the Patient's Compensation Fund and the other Joint Petitioners for the general damages suffered by Troy Edward Ewing; and reserving to the Claimants all other actions and claims whether against the Joint Petitioners or agianst [sic] other parties.
Plaintiff argues that since Dr. Aubert was nowhere listed as a joint petitioner, this provision reserved all of plaintiff's rights against him. In support, he cites general contract principles for the proposition that no transaction or compromise was ever reached between plaintiff and Dr. Aubert.
We note at the outset the wording of the last clause of this release appears very ambiguous. By reserving only "other actions and claims" against "other parties," it seems plaintiff failed to reserve his claims for general damages against these other parties. We further observe this so-called reservation appears only in the joint petition and is not found anywhere in the trial court's signed judgment approving the settlement.
However, even reading this paragraph in the light most beneficial to plaintiff, it does not solve the case. We must go beyond general principles of contract law and consider the necessary implications of the Louisiana Medical Malpractice Act to any settlement in this area.
Unlike an ordinary suit where recovery is essentially unlimited, the Medical Malpractice Act sets out precise limits of liability and ceilings on recovery. This scheme is set forth in La.R.S. 40:1299.42(B):
B. (1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in La.R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars for all malpractice claims because of injuries to or death of any one patient.

(3)(a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient's compensation fund pursuant to the provisions of R.S. 40:1299.44(C).
(b) The total amount paid in accordance with Paragraphs (2) and (3) of this Subsection shall not exceed the limitation as provided in Paragraph (1) of this Subsection.
(emphasis added).
Since plaintiff did not initially seek to challenge the constitutionality of this provision, it follows the maximum amount he could recover from Dr. Aubert was $100,000. Thus, we find the action of Dr. Aubert and his insurer in depositing $100,000 in the registry of the court was an unequivocal offer to settle with plaintiff for the maximum amount of Dr. Aubert's liability. When plaintiff removed this money from the registry of court, the only conclusion which can be drawn is that he accepted the offer. By operation of law, Dr. Aubert was released. He did not, nor could not, have any further liability under the statute, which plaintiff did not challenge. Clearly, plaintiff's attempt to raise a constitutional challenge in his supplemental and amending petition of October 29, 1985 was too late; by this time, Dr. Aubert's release was a fait accompli.[4]
*620 In brief and in argument to this court, plaintiff concedes the Medical Malpractice Act might provide for a statutory release, but argues that Dr. Aubert and his insurer failed to comply with the procedure listed in La.R.S. 40:1299.44(C) and should therefore not be allowed to avail themselves of the statute's protection. We disagree. A review of the statute shows no affirmative duties are placed on the health care provider or his insurer. They are simply entitled to notice, allowed to make objections and allowed to file evidence. Since Dr. Aubert and his insurer had already tendered the full amount of their liability, they had no interest in plaintiff's settlement with the PCF. They chose not to avail themselves of these provisions and filed a waiver of service and delays for responsive pleadings. By doing so, they clearly complied with their duties under the statute. The trial court recognized this crucial fact when it signed the judgment approving the settlement.
Our finding of a statutory release would, by itself, be enough to end the case. Nonetheless, we consider plaintiff's argument that he never intended to release Dr. Aubert. In doing so, however, we find there is strong evidence suggesting plaintiff realized he was settling with Dr. Aubert and further that he intended to do so. This evidence is implicit in the fact that plaintiff entered into settlement negotiations with the PCF. La.R.S. 40:1299.44(C), which sets up the procedure for recovery from the PCF, provides in pertinent part:
C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and the claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed....
(emphasis added).
The only party defendant contemplated by the medical malpractice act is the health care provider. Williams v. Kushner, 449 So.2d 455, 458 (La.1984). As we recently noted, the PCF is "not a negligent party and does not have the status of an Article 2315 defendant." Williams v. Kushner, 549 So.2d 294, 296 (La.1989). Therefore, in order for a claimant to recover from the PCF, he must comply with the statutory scheme outlined in La.R.S. 40:1299.44(C). Under that provision, the health care provider and his insurer must have agreed to settle their liability on a claim as a prerequisite to any recovery by claimant from the PCF. The very fact that plaintiff pursued recovery against the PCF leads to the inescapable conclusion that he acknowledged and accepted the offer of Dr. Aubert and his insurer to settle. Further, the use of the term "complete and final release" in the statute would be meaningless if it did not extend to the tortfeasor as well as the PCF.
Plaintiff argues the deposit by Dr. Aubert and his insurer was not an offer to settle for the limits of liability, but rather a "gratuitous payment" to plaintiff. We find little merit or logic to this argument. La. R.S. 40:1299.44(C)(5) provides in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
(emphasis added).
When Dr. Aubert and his insurer deposited the policy limits into the registry of the court, Dr. Aubert admitted his liability. In turn, he expected to be released from any further liability. To term Dr. Aubert's act "gratuitous" ignores the clear wording of the statute.
Plaintiff finally argues that Dr. Aubert and his insurer should not be allowed to thrust a "unilateral" settlement upon him. The obvious answer to this contention is that the settlement was far from unilateral. In the motion of March 16, 1984, Dr. Aubert and his insurer admitted that plaintiff would not settle for an amount below the limits of liability. Dr. Aubert and his insurer therefore deposited into the registry of the court the maximum amount plaintiff could recover from Dr. Aubert. This had the effect of admitting Dr. Aubert's liability and allowing plaintiff to pursue his recovery *621 against the PCF. At that point, plaintiff was free to challenge the constitutionality of the $100,000 limitation. He did not do so. Instead, he pursued his remedy against the PCF (which was only possible upon an agreement to settle by the health care provider) and ultimately removed the $100,000 from the registry of the court. Both actions constituted a clear, unequivocal acceptance by plaintiff of Dr. Aubert's offer to settle.
In sum, we find the lower courts correctly granted summary judgment in favor of Dr. Aubert and his insurer. Under the clear terms of the Medical Malpractice Act, Dr. Aubert was statutorily released from any further liability when plaintiff accepted the policy limits which he and his insurer deposited into the registry of the court. We note the "reservation of rights" relied upon by plaintiff is very ambiguous and not contained in the final judgment. Determinative is plaintiff's pursuit of a remedy against the PCF and his withdrawal of the money from the registry of the court on July 1, 1985 which manifested a clear intent to accept Dr. Aubert's offer of settlement. Thus, at the time of the filing of the supplemental and amending petition, plaintiff lacked standing to challenge the constitutionality of the $100,000 limitation.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed. Plaintiff is to bear all costs.
AFFIRMED.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
LEMMON, J., dissents and assigns reasons.
CALOGERO, Justice, Dissenting.
In Williams v. Kushner, 549 So.2d 294 (La. 1989), this Court held that a plaintiff cannot challenge the constitutionality of the Medical Malpractice Act's cap on patient recovery once the patient has settled with the physician (because the statutory fund has no existence outside of the statute).
Now, before a differently constituted majority, a plaintiff who has not settled with or released the physician is being told that, having settled with the PCF and having withdrawn a $100,000 sum deposited by the physician into court, without granting a release to the physician, he has "statutorily" released the physician.
The effect of today's opinion is that a severely injured plaintiff, with a claim presumably well over $500,000, is prohibited from having funds to which he is clearly entitledfrom the fund, which is freed of further liability, and from the physician, who tendered his money on a hope without insisting on a releasewhile being able to challenge in court the constitutionality of the cap, a strange result which is not countenanced either by law, logic, or common sense.
The defendant physician paid $100,000 into court without insisting on being released, plaintiff removed that sum from the registry by court order without giving the physician a release, and he is now being held to have done just that.
I would decide this matter the other way, finding that plaintiff did not release the defendant and that plaintiff is now able therefore to mount a challenge to the constitutionality of the Medical Malpractice Act's limitation on physician liability and patient recovery.
DENNIS, Justice, dissenting.
I respectfully dissent. The record contains no direct evidence showing that the parties agreed to a release; indeed, the only direct evidence of the parties' intent is the settlement agreement itself that expressly reserves claims against parties other than the Patient's Compensation Fund, the Attorney General, and the Commissioner of Insurance. The majority finds circumstantial evidence of an intent to release the health care provider in the facts that the plaintiff withdrew the funds from the court registry and proceeded against the PCF. In so finding, however, the court draws an inference in favor of the health care provider, and it ignores the rule that on motions for summary judgment reasonable inferences are to be drawn in favor of the party opposing the motion. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1989) (on rehearing); Burke v. Occidental Life Ins. Co., 427 So.2d 1165 (La.1983); Vermilion Corp. v. Vaughn, 397 So.2d 490 (La. 1981); Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977). It also ignores the fact that the plaintiff withdrew the funds pursuant to a court order that *622 did not contain any release despite the doctor's prayer for such a release in his petition seeking to make the deposit. Finally, the majority ignores the fact that the trial judge who initially considered and approved the deposit by the health care provider, approved the settlement with the PCF, and approved an order requiring the clerk to pay the funds to the plaintiff without a release reasonably found that the parties did not intend that the health care provider be released. The trial judge denied the defendant's motion for summary judgment when he first considered its merits. Thus the one impartial party who was most familiar with the settlement proceedings refused to hold that the parties had consented to a release of the doctor, and in so doing refused to draw the inferences the majority strains to make here. Only after being ordered to do so by the court of appeal did the trial court render judgment dismissing the suit against the health care provider. Accordingly, the evidence in the record is insufficient to establish the lack of a genuine issue as to a material fact so as to justify summary judgment. La.C. C.P. art. 966; Hondroulis v. Schuhmacher, supra; Duvalle v. Lake Kenilworth, Inc., supra; Mashburn v. Collin, supra.
More importantly, however, the majority errs in its treatment of the medical malpractice statute. According to the majority, summary judgment is required because a "statutory settlement" took place when the plaintiff withdrew the funds from the registry of the court. The majority opinion reasons that because La.R.S. 40:1299.42(B)(2) limits the liability of the health care provider to $100,000 and plaintiff did not initially challenge the constitutionality of this limitation, the deposit of the $100,000 to the registry of the court was an offer to settle that was accepted when the funds were removed, and "[b]y operation of law, Dr. Aubert was released." The majority terms this settlement without consent a "statutory release." To the extent the majority uses this as circumstantial evidence of an intent to release the doctor, it misapplies the law of summary judgment as stated above. To the extent the majority holds that the malpractice statutes require a release of the doctor as a matter of law, its interpretation of those statutes is erroneous.
Settlements are governed by the civil code articles on transaction and compromise, and the most basic requirement of these articles is that the parties "adjust their differences by mutual consent." La. C.C. art. 3071 (emphasis added). This article also requires that the contract of settlement "must either be reduced into writing or recited in open court." More important, article 3077 states that a "transaction made by one of the interested parties is not binding for the others." This is in accord with the general principle that a party is not presumed to have renounced his rights unless it clearly appears that he intended to do so. Weber v. Charity Hospital, 475 So.2d 1047 (La.1985); Carona v. State Farm Ins. Co., 458 So.2d 1275 (La.1984). The principle also applies as between solidary obligors; the release of a coobligor benefits other solidary obligors only to the extent of the released obligor's portion of the obligation. La.C.C. art. 1803; Joseph v. Ford Motor Co., 509 So.2d 1 (La.1987). La.R.S. 40:1299.44(C) contains no substantive rules changing these requirements; rather, it merely establishes a procedure to determine the amount of damages payable from the patient's compensation fund once the health care provider has admitted his fault. Nowhere does the statute mandate that the doctor is released upon surrendering the $100,000 limit. The only direct, substantive effect of the provider depositing the $100,000 limit with the court under the statute is that by so doing he admits fault and removes that issue from the court's consideration in fixing damages. La.R.S. 40:1299.44(C)(5). The majority opinion actually creates a conclusive presumption that a plaintiff who settles with the patient's compensation fund also intends to compromise all of his rights against the health care provider. This jurisprudential construction is directly in conflict with the civil code articles governing transaction and compromise, see La.C.C. *623 art. 3071 et seq., and it is not authorized or warranted by the medical malpractice legislation, La.R.S. 40:1299.41 et seq.
In sum, the record in this case does not provide a proper basis for a summary judgment because there is a genuine issue as to the material fact of the parties' consent to a transaction or compromise, and there is no legitimate basis in law for the majority's declaration that a medical malpractice plaintiff's consent is to be presumed conclusively or by operation of law from his silence.
LEMMON, Justice, dissenting.
Compromise is a bilateral contract. La. C.C. art. 3071. A compromise cannot be achieved with the consent of only one party.
Here, the doctor, apparently desirous of stopping the running of interest on the claim against him, unconditionally tendered $100,000 to plaintiff by depositing the money into the registry of court. Plaintiff was entitled to withdraw this unconditionally tendered money without giving up any rights. Only if the money had been conditionally tendered in the form of an offer to compromise would plaintiff's withdrawal constitute consent to a settlement. Plaintiff's intent not to compromise is further evidenced by his reservation against all parties other than the PCF, Attorney General and Commissioner of Insurance.
The judgment should be reversed and the case remanded for adjudication of the constitutional issue.
NOTES
[*] Watson, J., recused, Klees, J., voted on rehearing application in place of Watson, J., recused.
[**] Judge Robert J. Klees of the Court of Appeal, Fourth Circuit, sitting ad hoc for Watson, J., recused.
[1] Mrs. Ewing's anesthesiologist, Dr. Debyani Mehta, was also named as a defendant, but was later voluntarily dismissed from both suits by plaintiff.
[2] The only reservation in the judgment reads as follows:

[R]eserving unto Kenneth W. Ewing, the qualified tutor of Troy Edward Ewing, the continuation of a claim, the existence of which claim is denied by the Joint Petitioners, against the Joint Petitioners for the payment of future medical care and related benefits as provided in R.S. 40:1299.43 which will be incurred in the care of Troy Edward Ewing for the remainder of his natural life; this claim for future medical care and related benefits not to be pursued by claimants unless and until a Judgment is rendered and becomes final in this matter adjudging Woman's Hospital Foundation, a co-defendant herein, as a qualified Health Care Provider and, as such, entitled to the benefits of R.S. 40:1299.42.
[3] The writ was denied insofar as it affected plaintiff's claim for future medical expenses against the PCF. That issue is not now before us.
[4] Plaintiff argues this interpretation will prevent the Medical Malpractice Act from ever being constitutionally challenged, since the challenge would be foreclosed whenever the health care provider deposited his policy limits into the registry of the court. We disagree. A plaintiff is free to raise his challenge in his original petition and request damages in excess of the limit. Further, even if the money has been deposited, the plaintiff may simply not accept it and leave it in the registry of the court.