657 So.2d 236 (1995)
Jeanette MOODY and Max Moody, Individually and on Behalf of Their Minor Son, Jeffrey Moody, et al.
v.
UNITED NATIONAL INSURANCE COMPANY, et al.
No. 95-CA-1.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1995.
Rehearing Denied July 17, 1995.
*237 George P. Hebbler, Jr., Turner, Young, Hebbler & Babin, New Orleans, and Kurt P. Forshag, Metairie, for plaintiffs/appellants.
Lawrence L. McNamara, Robert J. Conrad, Jr. and Arthur F. Hickham, Jr., Adams and Reese, New Orleans, for defendants/appellees.
Richard P. Ieyoub, Atty. Gen., C.T. Williams, Jr. and J. Elliott Baker, Blue Williams, L.L.P., Sp. Asst. Attys. Gen., Metairie, for intervenor/appellee.
Before BOWES, GAUDIN and WICKER, JJ.
WICKER, Judge.
This is a medical malpractice suit for negligent treatment of Jeffrey Moody which resulted in his sustaining permanent brain damage. At issue on this appeal is the constitutionality of the Medical Malpractice Act's $100,000 limitation on recovery against a qualified health care provider. The trial court denied plaintiffs' request for a declaratory judgment of unconstitutionality and dismissed the defendant physician and his insurer because they had tendered $100,000 as the amount of the doctor's maximum liability under the Act. We find that the statutory cap is constitutional, but we vacate the dismissal of the defendants and remand the matter for further proceedings.
On October 14, 1989 Jeffrey Moody (then 14 years old) was attacked and kicked in the head while outside a Kenner movie theatre. He was taken to AMI St. Jude Medical Center, where he was treated in the emergency room by Dr. Lucius Clay Andrews. Plaintiffs allege that Dr. Andrews failed to treat Jeffrey appropriately for his head injuries. Despite subsequent surgery, Jeffrey sustained irreversible brain damage. As a result, he is a totally dependent quadriparetic requiring around-the-clock care, with seizure disorder, dysphasia, cognitive disfunction, and behavioral problems. Medical and rehabilitation expenses incurred to date exceed $1.5 million. Estimates of Jeffrey's future medical and rehabilitation expenses range from $3.1 million to $11.1 million.
Jeffrey's parents, Max and Jeanette Moody, pursued a claim before a medical review panel, which concluded that Dr. Andrews acted below the applicable standard of care in his treatment of Jeffrey. The panel found no negligence on the part of any of other health care providers. The Moodys then filed suit individually, on Jeffrey's behalf, and on behalf of Jeffrey's siblings against Dr. Andrews and his insurer, United National Insurance Company, as well as others not party to this appeal. The Moodys alleged in their petition that the Medical Malpractice Act, specifically La.R.S. 40:1299.42, is unconstitutional to the extent that it attempts to limit or cap the amount of damages the plaintiffs may recover.
Dr. Andrews and United National deposited in the registry of the court the sum of $100,000 plus judicial interest, a total of $127,900.54. The defendants tendered this amount as the doctor's maximum liability to the Moodys, asserting that the tender established Dr. Andrews' liability for purposes of plaintiffs' further recovery against the Patients' Compensation Fund.
Thereafter Dr. Andrews and United National filed a motion for summary judgment, seeking dismissal because of their tender and deposit of the funds into the court registry. They argued they should not be required to incur the expense of trial preparation and trial when there are no longer any issues to be decided as to them. In addition, they sought bifurcated trials of the liability/damages issues and the constitutionality issues.
*238 The Moodys filed a motion for declaratory and/or summary judgment, seeking declarations that the Malpractice Act's limitation on the amount of recovery from Dr. Andrews is unconstitutional, that United National's limits of coverage are $1 million, and that regardless of the constitutionality of the statute Max and Jeanette Moody are entitled to separate limits from their son under the insurance policy.[1] The Moodys' motion was served on the state Attorney General and the State intervened in the lawsuit to oppose the plaintiffs' motion regarding constitutionality and to support the defendants' motion.
On September 12, 1994 the district court rendered judgment denying the plaintiffs' motion for declaratory or summary judgment and pretermitted ruling on the motions for bifurcation of trial. On October 7, 1994 the court rendered judgment granting the defendants' motion for summary judgment and ordering that they be dismissed from the suit. The plaintiffs have appealed both judgments.
On appeal the plaintiffs urge the following assignments of error: (1) The trial court erred in granting Dr. Andrews' motion for summary judgment and in denying plaintiffs' motion for declaratory judgment and/or summary judgment because the Medical Malpractice Act is unconstitutional to the extent that it limits plaintiffs' recovery against Dr. Andrews and his insurer to $100,000, plus legal interest. (2) The trial court erred in failing to declare the $500,000 damage limitation set forth in LSA-R.S. 40:1299.42(B)(1) unconstitutional. (3) The trial court erred in denying plaintiffs' motion for declaratory judgment and/or summary judgment and refusing to hold that the United National Insurance Company policy provides one million dollars of coverage to Dr. Andrews. (4) Alternatively, the trial court erred in failing to hold as a matter of law that Dr. Andrews and his insurer were liable for three separate $100,000 caps.

Constitutionality of Damages Limitations
The Medical Malpractice Act sets a limitation on recovery in La.R.S. 40:1299.42, both as to the overall amount of damages and as to damages against an individual health care provider:
B.(1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.
The $500,000 overall cap was upheld as constitutional by our supreme court in Butler v. Flint Goodrich Hosp., 607 So.2d 517, 521 (La.1992), which concluded, "Overall, the Louisiana Medical Malpractice Act represents a reasonable but imperfect balance between the rights of victims and those of health care providers. It does not violate the state or federal constitutions."
The appellants acknowledge that the Butler case appears to have put an end to the constitutional attacks against the limitation provisions of the Medical Malpractice Act. They contend, however, that Butler was rendered "moot and obsolete" by the supreme court's subsequent decision in Chamberlain v. State Through DOTD, 624 So.2d 874 (La. 1993).
In Chamberlain the supreme court struck down as unconstitutional La.R.S. 13:5106(B)(1), which imposed a $500,000 cap on general damages recoverable in a personal injury suit against the State of Louisiana, its agencies, or its subdivisions. The court found that the statute violated Louisiana's constitutional prohibition against sovereign immunity. Thus, plaintiffs assert, "any law *239 or statute that places a ceiling on the amount of general damages a citizen can recover against the State of Louisiana or its agencies would be in direct violation of the Louisiana constitution."
Specifically, they contend that Chamberlain applies to La.R.S. 40:1299.39(F), which places a $500,000 limitation on recovery against a state health care provider, so that a patient injured as a result of medical malpractice of a state health care provider must now be fully compensated for his/her injuries without a statutory ceiling on the amount of damages. This would result in unfair treatment for a patient injured by the negligence of a private health care provider, who would be still be subject to the damages cap of La.R.S. 40:1299.42(B). Thus, plaintiffs urge that the statutory cap on damages against private health care providers must be unconstitutional also.
They rely on Williams v. Kushner, 549 So.2d 294 (La.1989), in which the supreme court held there was an unconstitutional anomaly between Act 435 of 1984, which allowed recovery of future medical costs on private sector claims filed on or after September 1, 1984, and Act 239 of 1985, which allowed such recovery as to malpractice claims against the state and applied to "pending claims and litigation." Because the 1984 Act worked unfairly to penalize private-sector litigants, the court held it must be reformed to apply to claims and litigation pending when it was passed.
Although we see merit in the plaintiffs' argument, we are bound by the rulings of our supreme court. As we noted in Turner v. Massiah, 94-29 (La.App. 5th Cir. 7/1/94), 641 So.2d 610, 615, "[T]he issue of whether a medical malpractice victim's recovery against the health care provider can constitutionally be limited has been addressed by the Louisiana Supreme Court in Butler v. Flint Goodrich Hosp. ... and answered affirmatively. We are constrained to follow that decision."[2]
Further, the Chamberlain court mentioned Butler without overruling it, stating:
We recently addressed the constitutionality of a similar statutory measure placing a ceiling on medical malpractice liability in Butler v. Flint Goodrich Hospital of Dillard University.... There, we upheld the legislature's power to enact a ceiling on liability of private health care providers... over constitutional challenges based on the equal protection and access to court provisions....
Chamberlain, supra, at 879.
Our view is buttressed by Payne v. New Orleans General Hosp., 627 So.2d 221 (La. App. 4th Cir.1993), in which the fourth circuit rejected a similar argument because the Chamberlain court had specifically mentioned Butler without either disapproving it or overruling it. The fourth circuit concluded,
[A]t the very least this illustrates that our Supreme Court had Butler well in mind and did not inferentially overrule it. Moreover, it is illogical to say that the Louisiana Supreme Court would cite Butler for authority in an opinion if it intended to inferentially overrule it in that very case.
Payne, supra, at 223.
As additional persuasion, plaintiffs cite Rodriguez v. Louisiana Medical Mut. Ins., 618 So.2d 390 (La.1993), which they contend held that the Patient's Compensation Fund and/or the Patient's Compensation Oversight Board are state agencies. As such, plaintiffs argue, under Chamberlain, supra, the legislature cannot place limits on the liability of the Fund or the Board. That case does not support their proposition, however, for the supreme court avoided deciding whether those entities are state agencies:
We ultimately conclude that it does not matter whether the Fund or the Board are state boards, for we resolve the issue before us by deciding that the Legislature, by its inclusion of R.S. 40:1299.44(C)(6) in the medical malpractice statute, meant for C.C.P. art. 2124 [requiring posting of a bond on suspensive appeals], not R.S. 13:4581 [exempting state agencies from *240 posting appeal bonds], to apply to suspensive appeals by the Fund.
Rodriguez, supra, at 392.
Although the supreme court has not yet ruled specifically on the constitutionality of the $100,000 individual damages limitation, the reasoning in Butler upholding the overall cap is applicable. Accordingly, the trial judge did not err in refusing to declare the damages limitations unconstitutional.

Separate Limitations for Each Claim
Plaintiffs' alternative argument is that Jeffrey, Max and Jeanette Moody have separate and independent claims, so that the defendants owe separate limits of liability to each.
That question has been addressed by both the third and the fourth circuits. In Todd v. Sauls, 94-10 (La.App. 3rd Cir. 12/21/94) at 21, 647 So.2d 1366, 1381, the third circuit found the $500,000 cap applies per patient, not per claim:
Looking at the wording of the medical malpractice cap on damages, we find the wording clear and unambiguous. * * * To construe the act to mean that the cap is per plaintiff is to misread the act. The act clearly states: "The total amount recoverable for all malpractice claims ... a patient..." (emphasis added). We emphasize the words "total," "all claims," and "a patient." This is clear, unambiguous language. The clear quantifiers are "a patient" as well as "total amount recoverable" and "all malpractice claims." Whether there is one or eight plaintiffs is of no moment. The physician's negligence is not multiplied by the number of plaintiffs.
Similarly, in LaMark v. NME Hospitals, Inc., 542 So.2d 753 (La.App. 4th Cir.1989), writ denied 551 So.2d 1334 (La.1989), the fourth circuit held that the statutory $500,000 limitation was a limitation on the total amount recoverable on all malpractice claims, rather than a limitation on each separate claim for a single act of malpractice.[3]
Further, this Court and several other circuits have held that claims for damages under La. Civ.Code art. 2315.6so-called Lejeune claimsare derived from the bodily injury to the tort victim and, as such, subject to an insurance policy's per-person limit rather than the higher per-accident limit. See Sharff v. Ohio Cas. Ins. Co., 584 So.2d 1223, 1226 (La.App. 2nd Cir.1991), writ denied, 589 So.2d 1055 (La.1991); Sandoz v. State Farm Mut. Auto. Ins. Co., 620 So.2d 441, 444 (La. App. 3rd Cir.1993); Shepard v. State Farm Mut. Auto. Ins., 545 So.2d 624, 629 (La.App. 4th Cir.1989), writ denied, 550 So.2d 627, 628 (La.1989); Carroll v. State Farm Ins. Co., 519 So.2d 265 (La.App. 5th Cir.1988), writ denied, 520 So.2d 756 (La.1988).
Like La.R.S. 40:1299.42(B)(1) setting the overall cap, the language of the statute setting the individual cap states it applies to "all malpractice claims because of injuries to or death of any one patient." La.R.S. 40:1299.42(B)(2). We conclude that the claims of Max and Jeanette Moody are derived from the malpractice injury to their son, did not result from separate acts of negligence, and therefore are included within the same cap as Jeffrey's claim.

Insurance Limits
Nor do we find merit to plaintiffs' contention that the insurer's liability should extend to its policy limits. The supreme court recently ruled there is no cause of action against a health care provider's insurer for damages beyond the statutory limit, because the statutory liability limitation is available to the insurer as well as the health care provider. Descant v. Adm'rs of Tulane Educ. Fund, 93-3098 (La. 7/5/94), 639 So.2d 246, 249.

Appealability of Judgment
Dr. Andrews and United National challenge the plaintiffs' right to appeal the ruling on constitutionality, arguing that denial of a motion for summary judgment is not *241 an appealable judgment. In this case, however, what plaintiffs sought was a declaratory judgment. Although plaintiffs' motion was styled alternatively a motion for summary judgment, they requested a determination of their "rights, status, and other legal relations," which is the purpose of a declaratory judgment. La.Code Civ. P. art. 1871. A declaratory judgment has the force and effect of a final judgment or decree, La.Code Civ. P. art. 1871, and therefore it is appealable. La.Code Civ. P. art. 1877; Fisher-Rabin Med. Ctr. v. Burdick Corp., 525 So.2d 1178, 1180 (La.App. 5th Cir.1988).

Dismissal of Defendants
Defendants' motion for summary judgment was predicated on their contention that the tender of the $100,000 individual cap amount relieved Dr. Andrews of further liability, despite the fact that plaintiffs had not accepted the tender.
In Ewing v. Aubert, 566 So.2d 616, 619 (La.1990), the supreme court held that a plaintiff who has withdrawn from the court registry a defendant's tender of the malpractice cap amount may not challenge the constitutionality of the recovery limitation, for the tender constitutes an unconditional offer to settle and the withdrawal constitutes an acceptance which by operation of law releases the defendant. The court noted:
Plaintiff argues this interpretation will prevent the Medical Malpractice Act from ever being constitutionally challenged, since the challenge would be foreclosed whenever the health care provider deposited his policy limits into the registry of the court. We disagree. A plaintiff is free to raise his challenge in his original petition and request damages in excess of the limit. Further, even if the money has been deposited, the plaintiff may simply not accept it and leave it in the registry of the court. [Emphasis added.]
Id., at 619 n. 4.
The course prescribed by the supreme court in Ewing is precisely that followed by the plaintiffs here. In order to challenge the constitutionality of the statute, they have refused to accept the tender. The court cannot, by dismissing a defendant, force a plaintiff to accept a tender where there is no settlement, for such action would preclude further relief. The plaintiffs are entitled to a final ruling on the constitutionality of their claims before the defendants can be dismissed from the suit. Because the ruling on the constitutionality issue is not yet final, we vacate the judgment dismissing the defendants.

Decree
For the foregoing reasons, the judgment of September 12, 1994 is affirmed. The judgment of October 7, 1994 is vacated. The case is remanded for further proceedings in accordance with the views expressed in this opinion. All parties are to pay their own costs for this appeal.
JUDGMENT OF SEPTEMBER 12, 1994 AFFIRMED;
JUDGMENT OF OCTOBER 7, 1994 VACATED;
CASE REMANDED.
NOTES
[1] Max and Jeannette Moody seek damages for their mental anguish and distress suffered in observing Jeffrey's pain, suffering and deterioration at the hospital. Under Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990), persons not directly injured may recover for mental pain and anguish they sustain due to negligent infliction of injury on a third person. That ruling has been codified as La. Civ.Code art. 2315.6.
[2] In the Turner case, this Court upheld the trial court's application of separate caps for each of two defendant physicians, on the basis that two separate acts of negligence were committed. Writs have been granted in that case and it is pending argument before our supreme court.
[3] The discussion in LaMark implies that the $500,000 limit applies to all acts of malpractice, even as to separate tortfeasors, which is contrary to our recent holding in Turner v. Massiah, supra. We shall not discuss the possible conflict between our circuit and the fourth circuit on that issue, however, because this appeal does not involve separate acts of negligence by multiple health care providers.