STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-0237

YONG TURNER

VERSUS

SOUTHWEST LOUISIANA HOSPITAL
ASSOCIATION, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 00-1000
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

AFFIRMED AS AMENDED.

Richard B. Cappel
Raggio, Cappel, Chozen & Berniard
P. O. Box 820
Lake Charles, LA 70602
(337) 436-9481
Counsel for Defendants:
    St. Paul Fire & Marine Ins. Co.
    Dr. David Drez

M. Keith Prudhomme
Lundy & Davis, L.L.P.
P.  O. Box 3010
Lake Charles, LA 70602
(337) 439-0707
Counsel for Defendant/Appellant:
    Louisiana Patients' Compensation Fund

**Randall Scott Iles**
**Attorney at Law**
**P. O. Box 3385**
**Lafayette, LA 70502**
**(337) 234-8800**
**Counsel for Defendant:**
    **John B. Blackmon, Sr.**

**Benjamin Joseph Guilbeau**
**Stockwell, Sievert, Viccellio**
**P. O.  Box 2900**
**Lake Charles, LA 70602-2900**
**(337) 436-9491**
**Counsel for Defendants:**
    **Southwest Louisiana Hospital Association**
    **Judith Murray**

**Jeffery Wade McDonald**
**Attorney at Law**
**3715 Canal Street**
**New Orleans, LA 70119**
**(504) 483-0750**
**Counsel for Plaintiff/Appellee:**
    **Yong Turner**

**DECUIR, Judge.**

This medical malpractice action against the Louisiana Patient's Compensation Fund stems from one of two consolidated suits filed by the divorced parents of John Black mon, Jr., a minor child who died following shoulder surgery in May of 1997. During the course of the litigation, one health care provider paid the maximum amount of his liability exposure in settlement of the plaintiffs' claims, and the Fund paid $250,000.00 to John Blackmon, Sr. in settlement of his claims. The Fund appeals a $400,000.00 judgment rendered in favor of Yong Turner, the decedent's mother, after a jury assessed damages at $10,000,000.00. Finding legal error, we amend the judgment rendered below, and as amended, affirm.

John Blackmon, Jr. injured his right shoulder at school in the winter of his sophomore year at East Beauregard High School. He was initially treated by a physician in DeRidder who then referred him to Dr. David Drez, a Lake Charles orthopedic surgeon. After physical therapy was unsuccessful, Dr. Drez recommended shoulder stabilization surgery to correct what he diagnosed as a recurrent traumatic anterior dislocating right humeral head. The recommended procedure was to be scheduled as outpatient surgery when the school year ended. Although the surgery was considered minor, John Blackmon, Sr. arranged his work schedule so that he could be home from Saudi Arabia when his son's surgery was to take place. Yong Turner offered to travel from El Paso to Lake Charles for the surgery, but her son persuaded her not to make the trip.

On the day of the surgery, Blackmon's step-mother accompanied him to the hospital while his father tended to their farm animals. After a lengthy delay, the procedure began and turned out to be quite an extensive surgery. It was successful, however, and the operative report states that Blackmon was sent to the recovery room

in "excellent condition." Because of the late hour, Dr. Drez decided to keep Blackmon in the hospital overnight. John Blackmon, Sr. testified his son was in good spirits when they visited in his room that evening. The family drove home to Pitkin for the night, planning to return to the hospital early the next morning to take Blackmon home.

During the night, Blackmon was given Dilaudid for pain, a medication which had been ordered by Dr. Drez to be administered every three hours as needed for pain. The nurse on duty, Judy Murray, gave Blackmon two milligrams at 12:30 a.m. and four milligrams at 3:30 a.m., both doses within the amount ordered by Dr. Drez. At 4:20 a.m., Nurse Murray noted Blackmon was resting peacefully, but the notes then indicate at 5:57, the patient was "found unresponsive." Resuscitation efforts were started immediately. Dr. Drez was called, and he and a team of medical professionals continued the resuscitation procedures. Their attempts were unsuccessful, and Blackmon was pronounced dead at 7:44 a.m.

The medical records submitted into evidence indicate the cause of death is unknown. The pathologist who conducted an autopsy was unable to determine the cause of death. However, the plaintiffs allege the medical review panel convened in this matter found the actions of the hospital, Dr. Drez, and Nurse Murray more likely than not caused the death of the decedent. The evidence contains inferences and allegations that Blackmon perhaps may have been given too much medication for his age and size, was improperly monitored by the nursing staff, or may have even been the victim of a mix up in the hospital charts. None of these suggestions was proven because Dr. Drez admitted liability by paying $100,000.00 to the plaintiffs in settlement of their claims. The settlement was made pursuant to La. R.S. 40:1299.44, which provides in part that payment by a health care provider of the maximum

2

amount of his liability exposure establishes that the patient is a victim of that health care provider's malpractice. *Stuka v. Fleming,* 561 So.2d 1371 (La. 1991).

The Fund's liability under the statute is admitted and established for any excess damages "emanating from the original apparent consequences or harm from the medical malpractice." *Bijou v. Alton Ochsner Med. Found.,* 95-3074, p.6 (La. 9/5/96), 679 So.2d 893, 896. The *Bijou* court described such harm as "original or primary harm," which was limited to "damages that are encompassed by the health care provider's duty not to commit medical malpractice, and which directly result from the health care provider's breach of duty or medical malpractice." *Id.* In the present case, the harm to the decedent was death. By virtue of Dr. Drez's payment of $100,000.00, the limit of his liability exposure, Dr. Drez is statutorily deemed to have admitted liability for Blackmon's death.

In their original petitions, the plaintiffs named as defendants not only Dr. Drez but also the hospital and Nurse Murray. When they settled with Dr. Drez, they dismissed the remaining defendants. At the trial for excess damages against the Fund, the trial court refused to allow the Fund to present evidence of negligence or fault on the part of the hospital or the nursing staff. The Fund contends the trial court's ruling was in error. We find, however, the evidentiary ruling was correct. In *Stuka,* the court concluded that the Fund is precluded from raising the issue of the fault of *any* health care provider when one has paid in settlement the maximum amount of his liability exposure. The court reasoned:

> We recognize that this literal interpretation of the statute affords less rights to the Fund when claims against multiple health care providers are settled than when such claims are tried. In the case of a trial the Fund has the opportunity for reduced exposure when more than one health care provider is determined to be liable. But in the case of a settlement with one health care provider for $100,000 the Fund does not have this opportunity in the subsequent litigation with the victim. However, the Legislature chose in cases of settlement simply to declare

3

the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers.

561 So.2d at 1374. *See also, Graham v. Willis-Knighton Med. Ctr.,* 97-0188 (La. 9/9/97), 699 So.2d 365; *Bijou.*

The Fund contends the ruling of *Stuka* has been compromised by recent jurisprudence which has indicated the Fund may offer proof of victim or third party fault in a trial for excess damages. Indeed, the supreme court very recently handed down the case of *Hall v. Brookshire Bros., Ltd.,* 02-2404, 02-2421 (La. 6/27/03), 848 So.2d 559, which held that in a trial against the Fund for excess damages, evidence that victim or third party fault caused any portion of the damages "is clearly relevant and admissable." *Id.* 848 So.2d at 568. In *Hall,* the third party was a pharmacist who was not a qualified health care professional under the malpractice act, and the victim herself was alleged to be partially at fault. In describing potential third parties, the *Hall* court specifically referred to the statutory listing of "a non-covered health care provider or a product manufacturer" found at La. R.S. 40:1299.44(D)(2)(b)(x), which provides authority for the Fund to seek indemnity or reimbursement from such parties. The *Hall* case originally included, as did the instant case, two qualified health care professionals who were dismissed by the plaintiffs after their settlement with another physician. The Fund in *Hall* made no attempt to prove malpractice or fault on the part of the two dismissed health care professionals. The trial court, however, allowed the Fund to present evidence on the fault of the pharmacist and the victim, and this ruling was affirmed by the supreme court.

Conversely, the Fund in the case *sub judice* seeks to prove the fault of the hospital and its nursing staff. This is procedurally identical to *Stuka*, where the plaintiffs dismissed the remaining defendants who were qualified health care

4

professionals and proceeded to trial solely against the Fund for their damages. *Stuka* held the Fund was prohibited from asserting the fault of the dismissed parties, inferring that this reduction in the plaintiff's burden of proof was the legislature's attempt to balance the myriad constraints, both procedural and substantive, on a medical malpractice claimant's cause of action under the malpractice act. *See also Graham*, (Calogero, C.J. dissenting); Recent Developments, 72 Tul. L. Rev. 1431 (1998). More recently, the legislature has now barred the Fund from asserting claims for contribution against qualified health care professionals under circumstances such as that presented herein in its amendment to La.R.S. 40:1299.44(C)(5).[1] Accordingly,

---

[1] 2003 La. Acts No. 882 provides in part:

(b) The board shall not be entitled to file a suit or otherwise assert a claim against any qualified health care provider as defined in R.S. 40:1299.41(a)(1) on the basis that the qualified health care provider failed to comply with the appropriate standard of care in treating or failing to treat any patient.

(c) The board may apply the provisions of Civil Code Article 2323 or 2324, or both, to assert a credit or offset for the allocated percentage of negligence or fault of a qualified health care provider provided at least one of the following conditions is met:

(i) A payment has been made to the claimant by, in the name of, or on behalf of the qualified health care provider whose percentage of fault the board seeks to allocate.

(ii) A payment has been made to the claimant by, in the name of, or on behalf of another qualified health care provider in order to obtain a dismissal or release of liability of the qualified health care provider whose percentage of fault the board seeks to allocate, provided that there shall be no separate credit or offset for the fault of an employer or other vicariously liable entity who was not independently negligent or otherwise at fault and who makes a payment in order to obtain a dismissal or release of liability of a single qualified health care provider for whom the payor is vicariously liable.

(iii) All or a portion of a payment made by another qualified health care provider, by the insurer of another qualified health care provider, or by the employer of another qualified health care provider has been attributed to or allocated to the qualified health care provider whose percentage of fault the board seeks to allocate, provided that there shall be no separate credit or offset for the fault of an employer or other vicariously liable entity who was not independently negligent or otherwise at fault and who makes a payment in order to obtain a dismissal or release of liability of a single qualified health care provider for whom the payor is vicariously liable.

(iv) A medical review panel has determined that the qualified health care provider whose percentage of fault the board seeks to allocate failed to comply with the appropriate standard of care and that the failure was a cause of the damage or injury suffered by the patient, or a medical review panel has determined that there is a material issue of fact, not requiring expert opinion, bearing on liability of the qualified health care provider whose percentage of fault the board seeks to allocate for consideration by the trier of fact.

we find the well reasoned and established rationale of *Stuka* controlling in the case before us.

The Fund also questions the trial court's award of $400,000.00 to Mrs. Turner, an amount which, when combined with the Fund's payment of $250,000.00 to Blackmon's father, exceeds the $500,000.00 statutory cap on medical malpractice damages. The Fund contends the trial court should have awarded $150,000.00, reflecting credit for the Fund's settlement with the father and the physician's settlement with both parents. Mrs. Turner argues her damages are subject to a separate cap from the decedent's father's damages because their claims are personal to each of them and each is independent from the other. She also contends the Fund should not have the right to decide the value of each plaintiff's claim when there is a limited amount to be distributed among multiple plaintiffs.

The medical malpractice act contains the following limitation on damages:

§ 1299.42. **Limitation of recovery**

> B. (1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.

---

(v) The qualified health care provider does not object within thirty days after notice of the board's intention to allocate the health care provider's percentage of fault is delivered via certified mail to the plaintiff, the qualified health care provider, and the qualified health care provider's professional liability insurer or to their attorneys.

(vi) The court determines, after a hearing in which the qualified health care provider whose percentage of fault the board seeks to allocate shall be given an opportunity to appear and participate, that there has been collusion or other improper conduct between the defendant health care providers to the detriment of the interests of the fund.

(d) Except where the sum of one hundred thousand dollars has been paid by, in the name of, or on behalf of the qualified health care provider whose percentage of fault the board seeks to allocate, in any case in which the board is entitled pursuant to the provisions of Civil Code Article 2323 or 2324, or both, to assert a credit or offset for the allocated percentage of negligence or fault of a qualified health care provider, the board shall have the burden of proving the negligence or fault of the qualified health care provider whose percentage of fault the board seeks to allocate.

6

Interpreting this provision, this circuit has previously determined that a single $500,000.00 cap applies collectively to all claims which flow from one act of malpractice resulting in a victim's injury or wrongful death. *See Todd v. Sauls,* 94-10 (La.App. 3 Cir. 12/21/94), 647 So.2d 1366, *writs denied*, 95-206, 95-0219 (La. 3/24/95), 651 So.2d 289, where the decedent's surviving spouse and seven adult children shared in wrongful death damages limited to $500,000.00. Other circuits have reached the same conclusion: *Moody v. United Nat. Ins. Co.,* 95-1 (La.App. 5 Cir. 5/10/95), 657 So.2d 236, *writ denied*, 95-2063, 95-2085 (La. 11/17/95), 663 So.2d 713; *LaMark v. NME Hospitals, Inc.,* 542 So.2d 753 (La.App. 4 Cir. 1989), *writ denied*, 551 So.2d 1334 (La.1989). *See also* The Medical Malpractice Damages Cap, 60 La.L.Rev. 547 (2000). We are persuaded neither by the action of the trial court nor by Mrs. Turner's arguments to disturb this well established principle articulated in both our statutory law and jurisprudence. Accordingly, the damages awarded to Yong Turner must be reduced to $150,000.00.

We address briefly the Fund's remaining assignments of error raised in this appeal. First, the Fund contends the trial court erred in failing to grant a continuance requested because of the unavailability of the Fund's expert witness. This witness was to give his opinion on the cause of death; he was unable to attend trial because of illness. In response, Mrs. Turner contends the trial had been continued on three previous occasions, and she notes the Fund made no effort to secure the out-of-court testimony of the witness. Indeed, the Fund chose to retain an expert witness from Georgia; given the uncertainty of litigation schedules, it would have been prudent for the Fund to depose its expert prior to trial or arrange for electronic testimony when it was learned the witness could not travel. Our review of the proceedings reveals no error in the denial of a continuance under these circumstances.

The Fund next argues the trial court erred in striking the testimony of three witnesses who were to testify regarding liability. Following the rule of *Stuka* and its progeny, the trial court granted the plaintiffs' motion in limine, finding the issue of liability irrelevant in this trial on damages. As we have previously determined, the trial court was correct in limiting this trial to a determination of damages in excess of $100,000.00. Liability was not at issue. Accordingly, we find no error in this evidentiary ruling.

The Fund contends the trial court improperly admitted into evidence certain photographs of the decedent and two works of art he had produced a short while before his untimely death. The items complained of were not disclosed to the Fund's attorneys as required by the court's pre-trial order and were not produced in discovery. While we certainly do not condone the admission of evidence which has not been shared with opposing counsel prior to trial, we believe the offerings, two childhood photos of the decedent and two drawings by him, were not prejudicial to the Fund, and their admission constitutes harmless error.

Finally, we find no merit to the Fund's contention that the trial court improperly commented on the evidence by answering the jury's question, posed during deliberations, as to whether Mrs. Turner had any other pending lawsuits. The trial judge answered the question in the negative, stating that he was not aware of any pending lawsuits. The Fund did not object to the court's proposed answer. We do not find the court's response to constitute an improper comment on the evidence.

For the above and foregoing reasons, the judgment of the trial court is amended to award damages in favor of Yong Turner and against the Louisiana Patient's Compensation Fund in the amount of $150,000.00. In all other respects, the judgment

of the trial court is affirmed. Costs of this appeal are assessed to the Louisiana Patient's Compensation Fund.

**AFFIRMED AS AMENDED.**